**CITY OF EASTON, Appellant,**

v.

**AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOY- EES, AFL–CIO, LOCAL 447.**

Commonwealth Court of Pennsylvania.

Argued Sept. 18, 1998.

Decided Dec. 3, 1998.

Reargument Denied Feb. 3, 1999.

Theresa Hogan, Easton, for appellant.

Wendy Chierici, Philadelphia, for appellee.

Before DOYLE, J., LEADBETTER, J., and McCLOSKEY, Senior Judge.

DOYLE, Judge.

The City of Easton (City) appeals from an order of the Northampton County Court of Common Pleas denying its petition to vacate an arbitration award that had reversed the City's decision to terminate one of its employees and reinstated him to his former job.

On May 30, 1996, Joseph Daiello (Grievant), a member of the American Federation of State, County and Municipal Employees, AFL–CIO, Local 447 (Union), was discharged from his job at the City's water treatment facility for allegedly requesting and receiving pay for hours not worked, falsifying records, and neglecting duties. Pursuant to the collective bargaining agreement (Agreement) between the City and the Union, the Union sought direct arbitration of his termination.[1] After conducting hearings on August 2 and August 19, 1996, a Board of Arbitrators (Board) found that, although there was insufficient evidence to prove that Grievant had falsified records or accepted pay for hours not worked, Grievant had neglected his duties in that he failed to fill a chemical feed bin with the proper amount of chemicals, failed to properly complete the chemical feed report on more than one occasion and left the plant without permission. However, the Board noted that Grievant was never disciplined for any of these occurrences in accordance with the disciplinary policy in the Agreement and was dismissed without any verbal or written warnings. Because the Board found that there was neither willful misconduct on the part of Grievant, nor evidence of any adverse effect on the City due to Grievant's conduct, the Board concluded that the City did not have just cause to terminate Grievant, and therefore, his termination violated the disciplinary policy contained in the Agreement.

The City filed a petition with the Northampton County Court of Common Pleas seeking to vacate the Board's award on the basis that it was manifestly unreasonable. On February 27, 1998, Common Pleas issued an order denying the City's petition. This appeal followed.

On appeal, the City argues that the Board erred in its interpretation of the disciplinary policy contained in the Agreement and that the Board's decision to reinstate Grievant was "manifestly unreasonable" and, therefore, should be set aside.

The scope of review of an arbitrator's decision under Act 195[2] is highly circumscribed, and that decision will not be overturned if it draws its essence from the collective bargaining agreement. *American Federation of State, County and Municipal Employees, District Council 88, AFL–CIO v. City of Reading*, 130 Pa.Cmwlth. 575, 568 A.2d 1352 (Pa.Cmwlth.1990). Under the "essence test," this Court is confined to determining whether the arbitrator's decision could rationally be derived from the collective bargaining agreement. *Riverview School Dist. v. Riverview Education Association, PSEA–NEA*, 162 Pa.Cmwlth. 644, 639 A.2d 974 (Pa.Cmwlth.1994), *petition for allowance of appeal denied*, 540 Pa. 588, 655 A.2d 518 (1995). Within the standard of the essence test is the requirement that the arbitrator's award cannot be manifestly unreasonable. *Id.* However, if the award can "in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention," the court must uphold the arbitrator's decision. *County of Centre v. Musser*, 519 Pa. 380, 392, 548 A.2d 1194, 1199 (1988).

The City argues that the Board's interpretation of the disciplinary policy contained in the Agreement was unreasonable and in error. The disciplinary policy at issue provides as follows:

> Employees shall not be disciplined or discharged without just cause. If an employee engages in willful misconduct **or** neglect of duty that results in significant adverse consequences to the Contractor or to the City, included [but] not limited to costs of operations, fines, penalties or violations of any safety, health or permit policies, regulations or requirements, the employee **may** be immediately dismissed by the Project Manager.

1. Employees wishing to file a grievance on grounds other than wrongful termination were required to follow a three-step grievance process under the Agreement.

2. The Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§1101.101–.2301 (Act 195), provides for mandatory arbitration of a public employee's grievance that arises out of a collective bargaining agreement. Section 903 of Act 195, 43 P.S. §1101.903.

For offenses that do not rise to the level of willful misconduct or do not result in consequences set forth above, disciplinary action shall be as follows:

First Offense     Verbal

Second Offense     Written Warning

Third Offense     Written notification of suspension without pay for a two (2) day period

Fourth Offense     Written notification of suspension without pay for a one (1) week period

Fifth Offense     Dismissal

(Sideletter A to the Collective Bargaining Agreement, Reproduced Record at 18a–19a.) (Emphasis added.) Therefore, an employee may be subject to immediate dismissal under two sets of circumstances: (1) when the employee engages in willful misconduct; **or** (2) when the employee's neglect of duty results in adverse consequences to the City. In all other situations, the City must follow the progressive disciplinary steps set forth above.

■ The City claims that the Board erred by interpreting the policy to require that, when terminating employees, the City must prove either (1) that the employee engaged in willful misconduct that resulted in adverse consequences to the city, **or** (2) that the City followed the five-step progressive discipline program. We believe this is a misreading of the Board's decision. The Board separately analyzed the issues of willful misconduct and adverse consequences and concluded that a finding of one or the other was necessary and that the City had failed to prove that **either** had occurred in this case. Even if we agreed with the City's contention that the Board misinterpreted the policy, this Court does not have the authority to overturn an arbitrator's decision based upon an alternative interpretation of the contract. The United States Supreme Court has long recognized that

> the question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because

their interpretation of the contract is different from his.

*United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 599, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Furthermore, "[t]he court may not review the arbitrator's decision on the merits, nor may the court substitute its judgment for that of the arbitrator." *City of Reading,* 568 A.2d at 1355.

■ Here, Grievant was never disciplined for his conduct at issue in accordance with the five-step disciplinary policy in the Agreement. The City claims that, because it believed that Grievant had engaged in willful misconduct, it was not required to follow any of the progressive disciplinary steps, and therefore, it properly complied with the disciplinary policy by immediately terminating Grievant. The Board, however, concluded that there was **neither** willful misconduct on the part of Grievant, **nor** was there evidence of an adverse effect on the City. Therefore, the City failed to prove that it had just cause to terminate Grievant. We believe the Board's findings and conclusions are reasonable and draw their essence from the Agreement. Accordingly, we must allow the Board's decision to stand.

■ The City further argues that the Board's decision is manifestly unreasonable because it is not supported by the Board's *findings of fact and therefore should be overturned.* As noted above, the scope of review of an arbitrator's decision is well established; deference is given to the decision if it draws its essence from the collective bargaining agreement. Pennsylvania Courts have recognized only a very narrow exception to this rule, applied in a very limited number of cases where the employee's conduct is so egregious that an arbitrator does not have the power to reverse the employer's decision to terminate. In its brief, the City argues that "[t]here is simply no basis to distinguish this case. . . .from the Pennsylvania Supreme Court's litany of holdings overturning the reinstatement of an employee after the arbitrators had found [that] the wrongful conduct [had] occurred." (Appellant's Brief at 15.)

We disagree and will address that "litany" of three Supreme Court opinions.

In *Philadelphia Housing Authority v. Union of Security Officers No. 1*, 500 Pa. 213, 455 A.2d 625 (1983), a security officer was terminated after he defrauded an elderly tenant living in a housing project where the officer was employed. Our Supreme Court held that the arbitrator's decision to reinstate the employee was manifestly unreasonable and exceeded the arbitrator's powers under the collective bargaining agreement between the parties. Similarly, in *County of Centre v. Musser*, 519 Pa. 380, 548 A.2d 1194 (1988), our Supreme Court overturned an arbitrator's award that reinstated two prison guards where the guards had been dismissed because of their outrageous and unlawful conduct, which included physically abusing a prison inmate. Additionally, the court in *Pennsylvania Liquor Control Board v. Independent State Stores Union*, 520 Pa. 266, 553 A.2d 948 (1989), overturned an arbitration award that reversed the dismissal of a liquor store manager for falsifying store business records and misappropriating funds. In reinstating the discharge, our Supreme Court noted that, under the collective bargaining agreement, it would be manifestly unreasonable to conclude that an employer "intended to bargain away its responsibility to ensure the financial integrity of its operation by discharging an employee who has misappropriated funds and falsified records." *Id.* at 276, 553 A.2d at 953.

The facts of this case do not fall within the purview of the narrow exception applied in the above cases because in all three of those opinions the conduct of the employees embodied criminal conduct which, as a matter of basic public policy, will not be tolerated. Such conduct is clearly absent in this case. According to the Board's findings, the City failed to prove that Grievant's actions even rose to the level of "willful misconduct," and such a finding is not "manifestly unreasonable." Grievant's conduct was not criminal as to the City,[3] nor was it so egregious as to permit this Court to vacate the Board's decision to reinstate Grievant.

Therefore, the order of the Court of Common Pleas is affirmed.

### ORDER

**NOW,** December 3, 1998, the order of the Court of Common Pleas of Northampton County in the above-captioned matter is hereby affirmed.

LEADBETTER, Judge, dissenting.

I respectfully dissent.

In this case, the City of Easton proved that Daiello had, on at least one occasion,[1] knowingly received wages from both the City and another employer on the same day and during the same period of two and one-half hours. The Board of Arbitrators[2] found as a fact that this conduct had occurred, but held

---

3. Although the City alleged that Grievant had requested and accepted pay from the City for times when Grievant was working for a second employer, the Board concluded that the City failed to prove an overlap of time: "Clearly, there was a theft of time from one of the employers, however the evidence presented was not conclusive as to whom. While the City alleged this theft occurred at the expense of the City, [Grievant's other employer] could just as easily have been the victim of this theft." (Board's Decision at 10.)

1. While the evidence gave rise to a suspicion that this was not an isolated incident, the City could prove only one occurrence of "double dipping."

2. One of the three arbitrators dissented, noting that:

The testimony presented at the arbitration hearing by the City certainly confirmed the City's position that Mr. Daiello was working for Coley Security Agency while he was being paid by the City and was expected to be working at the Water Plant. This "double dipping" certainly was willful misconduct which could have placed the citizens of Easton in a serious situation. The citizens must be assured that their drinking water is safe and healthy to use. Mr. Daiello's blatant disregard for his duties could have jeopardized the City's water supply and placed our citizens at risk.

Although the City could only document one shift and part of another where Mr. Daiello left the plant while on duty to work for Coley, that information coupled with testimony that he left the plant on numerous occasions without permission, should have been sufficient to justify the termination. When the additional evidence of not filling the chemical bins as required and falsely documenting that the chemicals had been used is considered, there is no doubt in my mind that the City acted appropriately in terminating Mr. Daiello.

that the City had failed to establish willful misconduct soley because the City could not prove at which employer's premises (if either) Daiello actually worked during the time in question. It stated, "Clearly, there was a theft of time from one the employers, [sic] however the evidence presented was not conclusive as to whom. While the City alleged this theft occurred at the expense of the City, Coley Security could just as easily have been the victim of this theft." (Decision of the Board of Arbitrators at 10.) Clearly, the Board reasoned that unless the City could show that it was the entity which was in fact cheated out of a day's services, there was no willful misconduct.

I strongly disagree with this analysis. Averring entitlement to two salaries for working in two places at the same time is dishonesty directed to both employers, and I believe either or both can fire him for willful misconduct. As the majority points out, the collective bargaining agreement allows immediate termination for behavior which *either* has an adverse effect on the City *or* amounts to willful misconduct. Whatever conclusions the Board may have articulated, it in fact required a showing of *both* when it held that Daiello's fraud did not amount to willful misconduct absent proof that the City suffered an actual loss of his services. I believe this is manifestly unreasonable, and I would therefore reverse.