756 A.2d 1107

**CITY OF EASTON, Appellant,**

v.

**AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL–CIO, LOCAL 447, Appellee.**

Supreme Court of Pennsylvania.

Submitted Jan. 31, 2000.

Decided Aug. 21, 2000.

Theresa Hogan, Easton, for City of Easton.

Wendy Chierici, Samuel L. Spear, Spear, Wilderman, Borish, Endy, Spear and Runckel, Philadelphia, for AFSCME.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

NIGRO, Justice.

At issue in the instant appeal is whether the Commonwealth Court erred in affirming the decision of the Court of Common Pleas denying the City of Easton's petition to vacate an arbitration award which reinstated Joseph Daiello to his position of employment at the City of Easton's water treatment facility. For the reasons that follow, we reverse.

On May 30, 1996, Joseph Daiello, a member of the American Federation of State, County and Municipal Employees, AFL–CIO, Local 447 (the Union) was fired from his job at the City of Easton's (the City's) water treatment facility for: requesting and receiving pay for hours not actually worked; falsifying records by recording data that implied that he had treated the drinking water supply with purification chemicals on occasions when he had not; and neglecting his duties by failing to treat the public water supply with the proper chemicals. Sideletter A to the collective bargaining agreement in force between the City and the Union at the time of Daiello's termination set forth the following disciplinary policy and procedures, pursuant to which the City terminated Daiello's employment:

### DISCIPLINARY POLICY

Employees shall not be disciplined or discharged without just cause. If an employee engages in willful misconduct or neglect of duty that results in serious adverse consequences

to the Contractor or to the City, includ[ing] but not limited to costs of operation, fines, penalties or violations of any safety, health or permit policies, regulations or requirements, the employee may be immediately dismissed by the Project Manager.

For offenses that do not rise to the level of willful misconduct or do not result in adverse consequences set forth above, disciplinary action shall be as follows:

First Offense: Verbal

Second Offense: Written Warning

Third Offense: Written notification of suspension without pay for a two (2) day period

Fourth Offense: Written notification of suspension without pay for a one (1) week period

Following his termination, Daiello filed a written grievance requesting reinstatement. A three-member board of arbitrators (the Board) held hearings on Daiello's written grievance on August 2 and August 19, 1996. To support its claim that Daiello committed willful misconduct by requesting and receiving pay for hours not worked in November of 1995, the City presented documentary evidence at the hearings consisting of its own daily time records, several weekly time sheets that Daiello himself filled out and signed, and time records from the Coley Security Agency, which employed Daiello on a part time basis in 1995. The City's daily time record for November 17, 1995 and Daiello's corresponding weekly time sheet indicated that Daiello worked a shift at the City's water treatment facility from 7:00 a.m. to 11:30 p.m. on that day. In addition, the City presented documentary evidence at the hearing consisting of time records from the Coley Security Agency. One of those time records, which was ostensibly filled out . by Daiello while he was patrolling various businesses and buildings on behalf of the Coley Security Agency, indicated that he was working for the Coley Security Agency from 9:00 p.m. on November 17, 1995 to 4:00 a.m. on November 18, 1995. The City of Easton also presented documents and testimony from City employees which established that Daiello repeatedly

failed to add the proper amount of chemicals to a chemical feed bin, failed to properly fill out chemical feed reports and failed to obtain permission before leaving the water treatment facility while on duty.[1]

Following the conclusion of the hearings, a divided Board issued a decision awarding Daiello reinstatement to his former position at the City's water treatment facility with back pay.[2] Although the two-member majority of the Board found as a matter of fact that Daiello had stolen time from either the City or from the Coley Security Agency on November 17, 1995, it nevertheless found that the City had failed to prove that Daiello's misconduct provided just cause for his immediate termination because the evidence presented failed to establish whether Daiello had stolen time from the City of Easton or from the Coley Security Agency. The majority of the Board further concluded that although Daiello had neglected his duties on several occasions by failing to fill a chemical feed bin with the proper amount of chemicals, failing to properly complete chemical feed reports, and leaving the plant without

1. The City also presented documentary evidence which established that on October 20, 1995, Daiello worked for the City from 7:00 a.m. to 11:00 a.m., then took sick time for the remaining portion of his shift, which was scheduled to end at 3:00 p.m. Later that same day, Daiello went to work for the Coley Security Agency, beginning his shift at 9:00 p.m. and ending at 4:00 a.m. on October 21, 1995. In addition, the City presented testimony that sometime previous to March 8, 1996, Daiello injured his back on the job while shoveling mud. As a result, Daiello reported that he was unable to work on March 8, 1996, and the City paid him for eight hours of sick time for that day. Despite the fact that Daiello reported that he was unable to work, and collected a full day's sick-pay from the City on March 8, 1996, he nevertheless went to work for the Coley Security Agency for a seven hour shift that same evening.

2. Board member Alvin F. Fairchild, Jr., authored a dissenting opinion in which he stated that:

[t]he testimony presented at the arbitration hearing by the City certainly confirmed the City's position that Mr. Daiello was working for Coley Security Agency while he was being paid by the City and was expected to be working at the Water Plant. This "double dipping" certainly was willful misconduct which could have placed the citizens of Easton in a serious situation. The citizens must be assured that their drinking water is safe and healthy to use. Mr. Daiello's blatant disregard for his duties could have jeopardized the City's water supply and placed our citizens at risk.

permission, his repeated neglect of his job duties did not constitute just cause for his termination because the City of Easton was not adversely affected by it.

The City of Easton filed a petition in the Court of Common Pleas of Northampton County seeking to vacate the Board's award on the basis that it was manifestly unreasonable. On February 27, 1998, the Court of Common Pleas entered an order denying the petition. The City of Easton then proceeded to appeal to the Commonwealth Court, arguing that the Board misinterpreted the terms of the collective bargaining agreement and that its determination that the City had failed to prove that Daiello had committed "willful misconduct" warranting his immediate termination was not supported by its finding of fact that Daiello had indeed stolen time from one of his two employers in 1995. A divided Commonwealth Court subsequently issued a published decision affirming the order of the Court of Common Pleas at *City of Easton v. AFSCME, AFL–CIO, Local 447,* 722 A.2d 1111 (Pa.Commw.1998). In short, the two-member majority of the Commonwealth Court panel found that the Board's decision reinstating Daiello was reasonable and drew its essence from the terms of the collective bargaining agreement because it rested on the Board's unfettered interpretation of the term "willful misconduct." *Id.* at 1113. Judge Leadbetter, however, authored a dissenting opinion in which she reasoned that, under the facts of this case, the question of which employer Daiello was stealing from when he filled out concurrent time sheets for both of his jobs (with the City of Easton and with the Coley Security Agency) was immaterial to the question of whether he committed "willful misconduct" while he was working for the City of Easton. *Id.* at 1115 (Leadbetter, J., dissenting). Judge Leadbetter added that "[a]verring entitlement to two salaries for working in two places at the same time is dishonesty directed to both employers, and I believe either or both can fire him for willful misconduct." *Id.*

Our standard of review in cases such as the instant one is the highly circumscribed "essence test." *See, e.g., State Sys. of Higher Educ. (Cheyney Univ.) v. State College Univ.*

*Prof'l Ass'n (PSEA–NEA)*, 560 Pa. 135, 743 A.2d 405, 413 (1999). Pursuant to the essence test, our review of the Board's decision ordering that Daiello be reinstated is limited to a determination of whether the issue, as properly defined, is encompassed within the terms of the collective bargaining agreement. *Id.* Assuming that it is, then the Board's decision on the issue must be upheld if it could be rationally derived from the collective bargaining agreement. *Id.; see also Community College of Beaver County v. Community College, Soc'y of the Faculty (PSEA/NEA)*, 473 Pa. 576, 594, 375 A.2d 1267, 1275 (1977). However, if the Board's decision could not be rationally derived from the collective bargaining agreement, then it can be reversed. *See State Correctional Inst. at Graterford, Dep't of Corrections v. State Civil Serv. Comm'n*, 718 A.2d 403, 409 (Pa.Cmwlth.1998) (citing *Pennsylvania Liquor Control Bd. v. Independent State Stores Union*, 520 Pa. 266, 553 A.2d 948 (1989) and *County of Centre v. Musser*, 519 Pa. 380, 548 A.2d 1194 (1988)).

Initially, we note that the issue of whether Daiello committed "willful misconduct" providing just cause for his immediate termination by stealing time from one of his two employers on November 17, 1995 is within the terms of the collective bargaining agreement, since the Disciplinary Policy contained within Sideletter A to the agreement clearly encompasses the issue in question. Therefore, the question before this Court becomes whether the Board's award reinstating Daiello can in any rational way be derived from the disciplinary policy contained in Sideletter A to the collective bargaining agreement. If it can, then our inquiry ceases and the Commonwealth Court must be affirmed. If it cannot, then an opposite result attains.

On appeal to this Court, the City of Easton first argues that the Board of Arbitrators' determination that the City failed to prove that Daiello committed "willful misconduct" is not rationally derived from the collective bargaining agreement because the Board improperly assumed that the collective bargaining agreement between the City of Easton and the Union permitted the immediate termination of an employee who

committed "willful misconduct" only if the employee's misconduct adversely affected the City in a significant way. The City's argument in this regard is based on the language contained in the disciplinary policy section of the collective bargaining agreement, which provides that any employee engaging in "willful misconduct or neglect of duty that results in significant adverse consequences to ... the City ... may be immediately dismissed...." The City contends that the Board misinterpreted this language to mean that an employee's "willful misconduct" would only constitute just cause for his immediate dismissal if the misconduct adversely affected the City in a significant way. This contention was properly put to rest by the Commonwealth Court, which correctly determined that the Board of Arbitrators never concluded that "willful misconduct" on Daiello's part would constitute grounds for his termination only if his misconduct adversely affected the City in a significant way. *City of Easton*, 722 A.2d at 1113. Rather, the Board found that the City had failed to prove that Daiello had committed "willful misconduct" providing just cause for his termination because it failed to establish that it was the employer whom Daiello actually stole time from, regardless of whether or not his theft of time had a significant adverse effect on the City.

Next, the City argues that the Board's determination that it had failed to prove that Daiello committed "willful misconduct" is not rationally derived from the collective bargaining agreement because it is not supported by the Board's finding of fact that he stole time from either the City or the Coley Security Agency while he was on the clock at the City's water treatment facility. While the City's argument in this regard is somewhat awkwardly phrased, we nevertheless find it to have merit.

As noted above, the Board specifically commented in its findings of fact that: "Clearly, there was a theft of time from one of the employers, however, the evidence presented was not conclusive as to whom. While the city alleged this theft occurred at the expense of the city, Coley Security could just as easily have been the victim of this theft." Adopting the

reasoning of Judge Leadbetter's dissent, the City contends that the question of which employer Daiello was stealing time from is immaterial to a determination of whether he committed willful misconduct by claiming that he was working for both employers at the same time. In essence, the City argues that once it established that Daiello committed a theft while he was supposed to be working at the City's water treatment facility, the Board should have found that he committed "willful misconduct" justifying his termination. In support of its argument, the City cites to several cases where this Court overturned arbitrators' awards of reinstatement based on the notion that governmental entities/agencies do not have the freedom to bargain away those powers that are essential to the proper discharge of their functions. *See, e.g., Pennsylvania Liquor Control Bd.*, 520 Pa. 266, 553 A.2d 948; *Musser*, 519 Pa. 380, 548 A.2d 1194 (1988); *Philadelphia Housing Auth. v. Union of Security Officers # 1*, 500 Pa. 213, 455 A.2d 625 (1983).[3]

██ The above cases cited by the City in support of its argument do indeed illustrate the error of the essential holding of the majority of the Commonwealth Court, which was that it lacked the authority to overturn the arbitration award because the Board's interpretation of the term "willful misconduct" in the disciplinary policy section of Sideletter A to the collective bargaining agreement was beyond the purview of judicial review under the essence test. In rendering its decision on the merits of Daiello's grievance, the Board did not, as the majority of the Commonwealth Court improperly assumed, have absolutely unfettered authority to interpret the term "willful misconduct" as it saw fit. Rather, the Board's construction of the term "willful misconduct" should have, but did not, take into account the fact that the City, by entering

3. We note that the majority of the Commonwealth Court misinterpreted the holdings of our decisions in these three cases, concluding that they were limited to only those situations where an employee's proven misconduct is criminal as to his employer. *City of Easton*, 722 A.2d at 1114. Nothing in the language of the cited cases, however, so limits their holdings and we reject any judicial interpretation so limiting them.

into the collective bargaining agreement at issue, did not and could not relinquish those powers which were essential to its ability to properly discharge its various functions, including the power to terminate those employees who steal from the City itself, or steal from others while working for the City. *See, e.g., Pennsylvania Liquor Control Bd.,* 520 Pa. at 277–78, 553 A.2d at 953–54 (recognizing the principle that governmental agencies do not have the freedom to relinquish those powers that are essential to the proper discharge of their functions, including, but not limited to, their power to terminate proven thieves). In light of the Board's failure to take into account the fact that the City did not and could not bargain away its right to terminate a proven thief such as Daiello, and for the reasons that follow, it simply cannot be said that the Board's decision awarding Daiello reinstatement was rationally derived from the collective bargaining agreement between the Union and the City.

As noted above, in order to conclude that Daiello's theft of time while he was supposed to be working for the City on November 17, 1995 did not constitute "willful misconduct" under the terms of the collective bargaining agreement, the majority of the Board must have found, by necessary implication, that the City had bargained away its right to terminate an employee who had been proven to have committed a theft against either the City itself or a third party while he was working for the City.[4] However, governmental entities do not have the freedom to relinquish their right to terminate an employee who is proven to have stolen property from them. *See id.; Musser,* 519 Pa. at 395–96, 548 A.2d at 1201–202; *Philadelphia Housing Auth.,* 500 Pa. at 216, 455 A.2d at 627. Along those same lines, the City, as a governmental entity, did

4. Pursuant to the Board's findings of fact, at *worst* Daiello left his job post at the City's water treatment facility without informing anyone that he was leaving, went to work for the Coley Security Agency, then applied for and collected pay from the City for those hours when he was supposed to be at the water treatment facility, but was actually working for Coley. At *best,* Daiello stole time from the Coley Security Agency by applying for and collecting pay for hours when he was actually working at the City's water treatment facility on November 17, 1995.

not and does not have the freedom to relinquish its absolute right to terminate an employee such as Daiello who, at *best*, stole from a third party while he was working in the employ of the City.[5]

In addition, we wish to emphasize that the relevant portion of the collective bargaining agreement at issue (i.e., the disciplinary policy section contained in Sideletter A to the agreement) does not contain any language even remotely suggesting that an employee's willful misconduct on the job will only provide just cause for his immediate termination if it can first be established that the City is the direct and intended victim of the employee's misconduct. To the contrary, the relevant portion of the agreement provides that willful misconduct on the part of an employee, standing alone, will provide just cause for his termination. It is also telling that there is no mention made by the majority of the Board or either of the courts below of any other evidence indicating an intention on the part of the City to relinquish its right to terminate

5. In its brief to this Court, the Union argues that the decision of the Board satisfies the essence test because the Board simply found that the City failed to prove that Daiello committed the specific infraction of which he was accused—stealing time from the City while he was actually working for the Coley Security Agency. We disagree with the Union's myopic view of the proceedings below. Before the Board, the City was required to prove that it had just cause under the terms of the collective bargaining agreement for terminating Daiello. During the course of the hearings before the Board, the City proved the crux of its charge that Daiello committed willful misconduct justifying his termination by presenting evidence which clearly established that he filled out time sheets and collected pay from both the City and the Coley Security Agency for the same hours on the same day. In so doing, the City affirmatively established that Daiello either: (1) applied for and eventually collected pay from the City for hours when he was actually working for and being paid by the Coley Security Agency; or (2) applied for and eventually collected pay from the Coley Security Agency for hours when he was actually working for and being paid by the City. In either instance, Daiello committed a theft while he was supposed to be working at the City's water treatment facility. Therefore, we find no merit to the Union's argument that the City failed to establish that Daiello's misconduct bore a close relation to his employment at the water treatment facility. To the contrary, as noted by Judge Leadbetter in her dissenting opinion below, Daiello's successful attempt to claim entitlement to two salaries for working in two places at the same time constituted an act of dishonesty directed at both the City and the Coley Security Agency, regardless of which employer he actually stole from.

employees who commit willful misconduct while on the job, so long as the misconduct was, or could have been, specifically directed against a third party. As would be expected, the record before this Court does not include any evidence whatsoever indicating such an intention on the part of the City. Given these facts, we do not hesitate to conclude that the arbitration award in the instant case is not rationally derived from the collective bargaining agreement at issue.

In its brief to this Court, the City asks whether it must continue to risk the potential of becoming a victim of an employee who it knows has perpetrated a fraud while he was supposed to be working for the City. For the reasons set forth above, we hold that it does not and therefore reverse the order of the Commonwealth Court and vacate the Board's decision awarding Daiello reinstatement to his position at the City's water treatment facility with back pay.[6]

Justice CAPPY files a dissenting opinion in which Justices ZAPPALA and SAYLOR join.

**6.** The dissent states that we are vacating the arbitration award reinstating Daiello based on our own, unbargained-for interpretation of the collective bargaining agreement at issue, rather than on a strict application of the essence test. The dissent then goes on to assail our reliance on *Pennsylvania Liquor Control Bd., Musser,* and *Philadelphia Housing Auth.,* questioning their continuing precedential authority in light of the fact that they use the term "manifestly unreasonable" to describe the arbitration awards at issue therein. Finally, the dissent attempts to distinguish those decisions, arguing that a theft committed by an employee of a governmental agency while he was supposed to be working for the governmental agency is somehow not inextricably linked to his on-the-job conduct and the proper functioning of the governmental agency for which he works. The dissent is incorrect on all three counts.

First, our decision in the instant case is based on a straightforward application of the essence test, not our own un-bargained for interpretation of the collective bargaining agreement at issue. Next, the dissent ignores the fact that the standard of review expressly employed by this Court in *Pennsylvania Liquor Control Bd.* and *Musser* was, in fact, the essence test. *See Pennsylvania Liquor Control Bd.,* 520 Pa. at 272–74, 553 A.2d at 951–52; *Musser,* 519 Pa. at 390, 548 A.2d at 1198. By holding as it did in those cases, the Court concluded that the arbitration awards could not have been rationally derived from their underlying collective bargaining agreements. That the Court chose to use the term "manifestly unreasonable" to describe the arbitration awards at issue in

450

CAPPY, Justice, dissenting.

Oftentimes, questionable decisions by lower tribunals present the greatest challenge to an appellate court. They tempt the court to stray from the sound jurisprudential foundation of limited appellate review and entice the court to engage in *de novo* review. This is especially true in the area of a court's consideration of labor arbitration awards. Labor arbitrators often render decisions that are most curious to those both inside and outside the labor arena, including those of us in the judiciary. However, if this court is to remain true to its deferential standard of review of labor arbitration awards, it must resist the pull to vacate an award with which the court disagrees, but which is nevertheless rationally derived from the parties' collective bargaining agreement.

Unfortunately, in this case, the majority has been lured into substituting its own interpretation of the collective bargaining agreement for that of the arbitration panel selected by the parties, and in doing so, vacates the arbitrators' award. Simply stated, I believe that the arbitration award in this case passes the essence test. First, the issue of whether just cause existed for the grievant's termination is contained within the collective bargaining agreement. Furthermore, the arbitrators' interpretation can be rationally derived from the language and context of the agreement. Thus, I respectfully dissent.

Of greater concern than the majority's failure to adhere to the essence test is the route by which the majority vacates the arbitration panel's award. The majority bases its opinion

those cases in addition to "not rationally derived from the collective bargaining agreement" does not magically transform the standard of review applied by the Court into a "manifest unreasonableness" standard. Nevertheless, the dissent fails to explain how the standard of review employed by this Court affects the continuing validity of the rule of law repeatedly set forth by this Court that governmental entities do not have the freedom of private enterprises to relinquish powers inherently essential to the proper discharge of their functions. Finally, we fail to see how any governmental agency could ensure the proper discharge of its official functions if it lacked the power to discharge employees (like Daiello) who were proven to have committed a theft either from the governmental agency itself or from a third party while they were working for the governmental agency.

upon three cases decided in the 1980's which utilized the concept of "manifest unreasonableness" or "reasonableness" to vacate arbitrators' awards and which, for the first time, devised the concept that a government agency does not have the freedom to "bargain away" matters, such as the discipline or dismissal of employees for certain conduct. *Pennsylvania Liquor Control Board v. Independent State Stores Union,* 520 Pa. 266, 553 A.2d 948 (1989); *County of Centre v. Musser,* 519 Pa. 380, 548 A.2d 1194 (1988); and *Philadelphia Housing Authority v. Union of Security Officers # 1,* 500 Pa. 213, 455 A.2d 625 (1983). Reliance upon these cases is misplaced for a number of reasons.

First, these three cases, which all relied upon the concept of reviewing an award for "manifest unreasonableness" or "reasonableness," were rejected in our recent decision in *State System* as being inconsistent with the deferential nature of the essence test. *State System of Higher Education (Cheyney University) v. State College University Professional Association,* 560 Pa.135, 743 A.2d 405, 412–13 (1999); *see also Danville Area School District v. Danville Area Education Association,* 562 Pa. 238, 754 A.2d 1255 (2000)(reviewing court will not consider whether an arbitrator's award was "manifestly unreasonable"); *Pennsylvania Game Commission v. Civil Service Commission (Toth),* 561 Pa. 19, 747 A.2d 887, 891 n. 7 (2000). Thus, because these cases which serve as the foundation of the majority opinion were based upon an iteration of a standard that is no longer valid, I question their value as precedent.

Second, the premise upon which the majority opinion is based, i.e., that a governmental entity may not bargain away those powers that are essential to the proper discharge of its function, is also suspect. The majority contends that the City of Easton (City) in this case did not have the freedom to relinquish its absolute right to terminate an employee who stole from a third party while he was working for the City, i.e., bargain away the ultimate determination of the appropriate discipline for theft.

The origin of this legal proposition is found in *Philadelphia Housing Authority, supra.* In vacating an arbitrator's award, the *Philadelphia Housing Authority* court stated, "however, it is manifestly unreasonable to conclude that the Housing Authority could have intended to bargain away its absolute responsibility to ensure the integrity of its housing security force by discharging an officer who has defrauded one of the very people whom he is paid to protect." *Id.* at 627.[1] Similar language was used to vacate an arbitrator's award in *Independent State Stores Union,* 553 A.2d at 953.

Preliminarily, the use of the limitations on bargaining principle, in the context of the now rejected "manifestly unreasonable" standard, renders this legal proposition fatally flawed. This aside, close scrutiny of the statute on which public employee grievance arbitration is based, the Pennsylvania Employee Relations Act (Act),[2] casts serious doubt upon the validity of such a legal principle. Specifically, Section 701 of the Act sets forth the matters that are subject to collective bargaining. 43 P.S. § 1101.701. These include wages, hours, and others terms and conditions of employment. Conversely, Section 702 of the Act sets forth what matters are not subject to collective bargaining. 43 P.S. § 1101.702. These are matters of inherent managerial policy. They include areas of discretion or policy such as the functions and programs of the public employer, standards of services, budget, utilization of technology, organizational structure, and selection and direction of personnel. Notably, discipline and discharge are not specifically prohibited as subjects of bargaining and at least one case from our court has come to the conclusion that the "dismissal" of employees is a matter subject to collective bargaining. *See PLRB v. Mars Area School Dist.,* 480 Pa. 295, 389 A.2d 1073, 1074–75 (1978).

Additionally, the proposition that a public employer does not have the freedom to bargain away discipline or dismissal for

1. It is interesting to note that the *Philadelphia Housing Authority* court failed to cite to any legal authority in support of this unique proposition.

2. 43 P.S. § 1101.101 *et seq.*

certain conduct appears to be at odds with the test articulated by our court used to determine whether a matter is, or is not, a subject of bargaining. In *PLRB v. State College Area School Dist.,* 461 Pa. 494, 337 A.2d 262, 268 (1975), this court proclaimed that "where an item of dispute is a matter of fundamental concern to the employes' interest in wages, hours and other terms and conditions of employment, it is not removed as a matter subject to good faith bargaining . . . ." Obviously, the parameters of discipline or dismissal are at the core of the employment relationship, and clearly fall into the category of terms and conditions of employment, and thus, are a proper subject of collective bargaining. *Mars Area School Dist.,* 389 A.2d at 1075; *see also Pennsylvania State Police v. Pennsylvania State Troopers' Assoc. (Betancourt),* 540 Pa. 66, 656 A.2d 83, 90 (1995)(discharge is related to the terms and conditions of employment under Act 111). As cogently noted by Justice Zappala in his dissent in *Independent State Stores Union,* while there may be strong policy reasons why the legislature, or the Governor, may seek to impose limitations upon agencies with respect to bargaining over discipline for, *inter alia,* theft, they have not done so. Thus, in the absence of any such dictate, or any limitation found in a collective bargaining agreement, it appears that the rights and obligations regarding discipline and dismissal remain matters subject to collective bargaining and may be interpreted and reviewed by an arbitrator.[3]

Finally, even assuming the viability of the legal proposition created in *Philadelphia Housing Authority* regarding the lack of freedom to bargain away the power to discipline or dismiss employees for certain conduct, this principle of law is inapplicable to the facts in this case. In each of the three prior cases in which this doctrine was utilized, the employee's conduct was both illegal and *directly* related to the employee's role in

3. Contrary to the majority's assertion, it is not that the government agency lacks the power to discipline or to discharge an employee. It is just not an unfettered power. It is simply that the discipline and discharge of employees is subject to bargaining between the parties and that a decision to discipline or discharge an employee may be subject to review by an arbitrator.

carrying out the employing agency's function. For example, in *Philadelphia Housing Authority,* a security officer was discharged after committing fraud against one of the elderly patients with whom he was entrusted to protect. Likewise, in *Musser,* two prison guards were terminated for their repeated assault on an inmate under their vigil. Finally, in *Independent State Stores Union,* a liquor store manager was fired for theft of store proceeds over which he had responsibility. Thus, in each of these cases, the illegal act on the part of the employee was inextricably linked to the on-the-job conduct of the employee and the function of the agency.

Conversely, the facts of this case are devoid of a similar nexus. The grievant was a laborer at the City's water treatment plant. His charge was to aid in ensuring the quality of the City's water supply. The gravamen of the charge against the employee was that he collected wages from either the City or another employer while actually working for the other. Discipline of the grievant for this type of objectionable, yet indirect, affront to the City is simply not akin to discipline for conduct which is directly related to the employee's role with respect to the function of the agency or which impacts upon the integrity of the agency. Furthermore, it is critical to note that the City failed to prove against which employer the theft of time occurred or that the City was in fact harmed. Thus, application of the principle regarding limitations on the freedom to bargain over discipline or dismissal under the facts in this case is simply misplaced.

For all of the foregoing reasons, I respectfully dissent and would affirm the decision of the Commonwealth Court which upheld the arbitrators' award.

Justices ZAPPALA and SAYLOR join this Dissenting Opinion.