# UNION CITY AREA SCHOOL DISTRICT

v.

# UNION CITY AREA EDUCATION ASSOCIATION, PSEA/NEA, Appellant.

Commonwealth Court of Pennsylvania.

Argued May 6, 2008.

Decided June 4, 2008.

---

Richard S. McEwen, Edinboro, for appellant.

Mark T. Wassell, Erie, for appellee.

BEFORE: FRIEDMAN, Judge, COHN JUBELIRER, Judge, and COLINS, Senior Judge.

OPINION BY Senior Judge COLINS.

This is an appeal by the Union City Area Education Association, PSEA/NEA (Association) from the August 15, 2007 decision and order of the Honorable William R. Cunningham, of the Court of Common Pleas of Erie County (Trial Court), granting the Union City Area School District's (District) petition to vacate the arbitration award issued on March 2, 2007 by Edward Scurry (Arbitrator), modifying the District's discharge of Carl Howell (Grievant), a fifth grade teacher, and reinstating him to his teaching position with a sixty-day suspension. For the reasons set forth below, we reverse, dismiss the District's petition to vacate, and reinstate the Arbitrator's award.

Grievant, a tenured teacher in the District, was notified of his dismissal on August 3, 2005. The District alleged that Grievant received two consecutive ratings of unsatisfactory performance, was incompetent to be a classroom teacher, and was persistently negligent in the performance of his duties. The Association filed a grievance on his behalf, and, after several hearings, the Arbitrator found that the District violated the collective bargaining agreement, and sustained the grievance in part. Subsequent to the Trial Court's order vacating the Arbitrator's award, and the filing of this appeal, the Trial Court issued its 1925(b) opinion, dated November 21, 2007. In its opinion, the Trial Court cited a number of examples of incidents documented by the District that it considered representative of Grievant's deficiencies, and which, according to the Trial Court, establish that Grievant failed to supervise his students, failed to address inappropriate behavior and language by the

students, did not control his temper, and was persistently negligent:

A. Three students engaged in a fight on their way to the bus. The fight escalated due to Grievant's lack of supervision. (Arb. T., pp. 118, 120, 145–147, 301–303).

B. A student entered Grievant's classroom with a video camera for a preannounced and approved school project. The student was confronted by Grievant who put his hand over the camera and ordered the student to leave the classroom. The student was traumatized by this event. (Arb. T., pp. 32, 220–224, 344, 345, 351).

C. A student's mother arrived at the school to pick up her son who had been in Grievant's charge for detention purposes. The student was not with Grievant and initially could not be found. The student was eventually located in another teacher's office after wandering the halls unsupervised. (Arb. T., pp. 170, 171, 228, 229, 249, 292–294, 357–360).

D. The Grievant lost his temper, grabbed an agenda book out of a student's hands and ripped it in half within an arm's length of the student in full view of other students. The student was extremely upset and afraid to return to Grievant's classroom. The student's parents requested that she be removed from Grievant's classroom. The student, who had behavioral challenges, was transferred to another teacher's classroom. This student's behavior diminished considerably and she was managed easily in another teacher's classroom. (Arb. T., pp. 16–20, 61, 105, 106, 296–298, 362).

E. One of Grievant's students was observed outside of the school building prior to dismissal. Grievant had not noticed the student was missing from his classroom. Because the student was not supervised by Grievant, a host of troublesome scenarios existed. (Arb. T., pp. 120, 122, 149–151, 194, 304–306).

F. One of Grievant's students was bitten in the neck, kicked and hit during recess, but Grievant noticed nothing. Grievant was supposed to be supervising recess but never noticed the fight. The student told his mother after school about the fight. The student's parents were not notified by the school that the fight occurred. The student's mother called the principal to report the incident and queried why Grievant did not control the situation. This caused the principal to launch an investigation. (Arb. T., pp. 42, 43, 373).

G. Grievant was observed returning from a field trip with his students. The students were near busy roads and a creek. Because of the obvious danger, the School District would not permit the students to be near the creek. The students were engaging in horseplay, pushing and hitting each other and not walking in an orderly line. One student was observed near the creek. Meanwhile, Grievant was walking along indifferently and made no attempt to keep his students safe and organized. Importantly, all of these events were observed by the Director of Pupil Services, (Arb. T., pp. 180–182).

(Opinion of the Trial Court, November 21, 2007, pp. 3–4.) The Trial Court further opined that the record supports the District's evaluations, specifically with respect to Grievant's failure to cooperate with course improvement plans, failure to implement expected teaching strategies, and failure to improve teaching performance.

The Trial Court addressed the standard of review of an arbitrator's decision:

The well-established standard for judicial review of an arbitrator's decision is

the "essence test" under which the decision of the arbitrator is final and binding in the majority of cases. *State System of Higher Education (Cheney University) v. State College University Professional Assn. (hereinafter "SCUPA")*, 560 Pa. 135, 743 A.2d 405 (1999). The *SCUPA* Court clarified the application of the "essence test" by instituting the following two-prong analysis:

> First, the court shall determine whether the issue as properly defined is within the terms of the collective bargaining agreement. Second, if the issue is embraced by the agreement and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can be rationally derived from the collective bargaining agreement . . . a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement. *SCUPA*, 560 Pa. at 150, 743 A.2d at 413.

(Trial Court opinion, p. 7.) The Trial Court opined that the second prong of the "essence test" was not met; i.e., the Arbitrator's award is not rationally derived from the collective bargaining agreement because a "public employer such as a school district cannot bargain away its right to terminate a teacher whose conduct deprives the employer of its ability to perform its core function," citing *City of Easton v. American Federation of the State, County and Municipal Employees, AFL–CIO, Local 447*, 562 Pa. 438, 756 A.2d 1107 (2000); *Greene County v. District 2, United Mine Workers of America*, 578 Pa. 347, 852 A.2d 299 (2004).[1]

On appeal, the Association argues that the Trial Court's decision relies upon the application of the core functions doctrine, a doctrine specifically rejected as an exception to the "essence test" by our Supreme Court in *Westmoreland Intermediate Unit # 7 v. Westmoreland Intermediate Unit # 7 Classroom Assistants Educational Support Personnel Association, PSEA/ NEA*, 595 Pa. 648, 939 A.2d 855 (2007), and supplanted with the public policy exception to the essence test.[2] The Association fur-

---

1. In *City of Easton*, the Pennsylvania Supreme Court set forth what has been characterized as the "core functions" exception to review under the essence test; i.e., an employer "by entering into a collective bargaining agreement could not relinquish those powers which were essential to its ability to properly discharge its various functions . . ." *City of Easton*, 562 Pa. at 447, 756 A.2d at 1111. In *Greene County*, our Supreme Court stated:

> [T]o permit an arbitrator to interpret the agreement as to require reinstatement of an employee who was determined to have engaged in egregious conduct that strikes at the very core function of the public enterprise would be to deprive the employer of its ability to discharge that essential function.

578 Pa. at 362, 852 A.2d at 308.

2. In *Westmoreland*, in a plurality opinion, the Pennsylvania Supreme Court stated:

> Considering the General Assembly's mandate of final and binding arbitration to resolve disputes under PERA [Public Employe Relations Act] and the benefits of deferential judicial review, but keeping in mind the important services entrusted to public entities, which are responsible for the health, safety, and welfare of our citizens, today we reaffirm the two-prong essence test as articulated in Cheney University. We conclude, however, that the essence test should be subject to a narrow exception by which an arbitrator's award will be vacated if it is violative of the public policy of the Commonwealth. While the core functions exception as articulated in City of Easton attempted to set forth such a standard, we find, for the reasons stated above, the core functions exception is insufficiently precise, and raises serious questions regarding the jurisdiction to utilize arbitration as well as concerns regarding the potentially limitless reach of the exception as stated.

ther argues that because the Trial Court reinterpreted the facts and substituted its judgment for that of the Arbitrator, who explicitly held that there was a lack of egregious misconduct sufficient to trigger the core functions doctrine, the Trial Court's ruling would be in error even if the core functions doctrine had not been displaced.

The Association avers that the relevant public policy is expressed in the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101.2301 (PERA) and the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1–101–27–2702 (School Code). PERA states: "Nothing contained in this act shall impair the employer's right to hire employes or to discharge employes *for just cause* consistent with existing legislation." 43 P.S. § 1101.706 (emphasis added). The Association argues that the relevant existing legislation, the School Code, disqualifies tenured teachers from employment only if they commit certain enumerated criminal acts or violate standards set forth in Section 1122.[3] According to the Association, since Grievant committed no offenses that disqualify him from employment under the School Code, and the District lacks just cause for dismissal, there is no discernable public policy preventing the Arbitrator from reinstating Grievant's employment with the District.

The District counters that the Arbitrator's award should still be vacated, pursuant to *Westmoreland,* because the reinstatement of Grievant violates the Commonwealth's well-defined public policy in favor of establishing a strong public school system. The District avers that this award will reinstate Grievant to a teaching position when the evidence established on the record shows that he has been found lacking in teaching skills over two consecutive years, has not improved, has failed to appropriately institute programs determined to be in the best interest of students, and has placed students in unsafe environments. (District's Brief, p. 6.) The District argues that the General Assembly, in enacting PERA, made the intended public policy of the act explicit when it mandated, in Section 1101.101, that no result or byproduct of that legislation shall intrude upon the paramount rights of citizens within the state or violate the public welfare; public policy would thus be violated by Grievant's reinstatement, since his continued teaching will negatively affect the general welfare of students within the Commonwealth. The District avers that under the School Code, every school district is required to employ only qualified professional employees and maintain rigorous standards to facilitate student achievement; thus, the District properly dismissed Grievant on the grounds of unsatisfactory work performance, incompetence, and persistent negligence in the performance of his teaching duties.

The Arbitrator dismissed the District's assertion that Grievant received two consecutive unsatisfactory performance rat-

(595 Pa. at 665, 939 A.2d at 865.)

**3.** § 11–1122. **Causes for termination of contract**

The only valid causes for termination of a contract heretofore or hereafter entered into with a professional employe shall be immoral-

ity, incompetency, intemperance, cruelty, persistent negligence, mental derangement, advocation of or participating in un-American or subversive doctrines, persistent and wilful violation of the school laws of this Commonwealth on the part of the professional employee . . .

ings,[4] noting that there was an intervening period between the two evaluations which must be considered as a period of satisfactory rating, and stating further that even accepting that the performance ratings were consecutive, the second evaluation necessarily fails as many of the infractions stated therein fall outside the period of evaluation, and items listed within that period of evaluation cannot support the unsatisfactory rating. The Arbitrator noted that other than two incidents to which Grievant acknowledged responsibility—an incident involving tearing up a student's notebook and an incident involving a child missing from a classroom—the litany of incidents as developed by the District do not support of charge of incompetence or persistent negligence, and are "de minimus, refuted or to some degree suspect." The Arbitrator concluded that "[W]hile the record is clear that grievant was not a stellar teacher, there is nothing separately or collectively that would justify termination." (Arbitrator's Award, March 2, 2007, p. 2.) The Arbitrator determined that the District violated the collective bargaining agreement.

In *Westmoreland,* our Supreme Court considered the role of arbitration under PERA, and discussed the proper contours of the deferential essence test, as first formally adopted in Pennsylvania in 1977, as the standard of judicial review of grievance arbitration awards. The Pennsylvania Supreme Court has consistently reaffirmed the essence test, and in *Westmoreland,* notes that "courts should not become embroiled in the merits of an arbitration, but rather, must only determine if the award is indisputably and genuinely without foundation in or fails to logically flow from the collective bargaining agreement." 595 Pa. at 661, 939 A.2d at 866.

Under *Westmoreland,* however, the "core functions" exception to the essence test is supplanted with the public policy exception. In its plurality opinion, our Supreme Court held that a court should not enforce a grievance arbitration award that contravenes public policy; however, such public policy must be "well-defined, dominant, and ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." 595 Pa. at 662, 939 A.2d at 866. However, Chief Justice (then Justice) Castille dissented in *Westmoreland,* noting that the plurality's public policy exception "will only create further uncertainty and produce more litigation in a field where certainty and predictability are paramount." 595 Pa. at 671, 939 A.2d at 869 (footnote omitted). While agreeing with the plurality opinion with respect to its affirmation of the essence test, and expressing no fixed opposition to the plurality's rejection of the core functions "exception" to the essence test, Chief Justice Castille stated:

> [O]nce a reviewing court has found, as required by the majority, that the issue before it falls within the terms of the collective bargaining agreement, then the second prong should, in my view, include further review to determine if the decision of the arbitrator is manifestly unreasonable ... review for manifest unreasonableness strikes the better

4. In its brief, the Association noted that between the two periods for which unsatisfactory ratings were received by Grievant, there was an unrated period from November, 2003 through August 29, 2004, and as a matter of law, this period must be deemed satisfactory.

(citing *Elias v. Board of School Directors,* 421 Pa. 260, 218 A.2d 738 (1966) and *Tyler v. Jefferson County–DuBois Area Vocational Technical School,* 467 Pa. 595, 359 A.2d 761 (1976).)

balance between deference and meaningful judicial review.

595 Pa. at 675, 939 A.2d at 869–871.

*Sub judice*, the Arbitrator explicitly addressed each of the three reasons for dismissal set forth by the District. He found that the District failed procedurally to issue two consecutive ratings of unsatisfactory performance by Grievant; failed to support the charge of his incompetence; and failed to establish that he was persistently negligent. The Arbitrator noted particularly that incidents cited by the District were "alleged, but not supported," and he recognized "a disconnect to what was observed and what was communicated to grievant." (Arbitrator's Award, p. 2.) After considering the testimony, exhibits, and argument, the Arbitrator found no serious misconduct that would justify termination, and determined that the District failed to establish just cause for Grievant's dismissal; thus, the District violated the collective bargaining agreement.

Without any authority to classify the instant matter as qualifying as an exception to the essence test under either the *Westmoreland* "public policy" exception or the "manifestly unreasonable" exception as enunciated in the *Westmoreland* dissent, we must reverse the order of the Trial Court and reinstate the Arbitrator's award, since it clearly flows from the collective bargaining agreement and satisfies the essence test. *Office of the Attorney General v. Council 13, American Federation of State, County Municipal Employees, AFL–CIO*, 577 Pa. 257, 844 A.2d 1217 (2004). Accordingly, the order of the Trial Court is reversed, and the Arbitrator's Award is reinstated.

### ORDER

AND NOW, this 4th day of June, 2008, the order of the Court of Common Pleas of Erie County is reversed, and the Arbitration Award issued on March 2, 2007 is reinstated.

### CONCURRING OPINION BY Judge COHN JUBELIRER.

I reluctantly concur with Senior Judge Colins' well-reasoned opinion. I write separately, however, to express my concern over the difficulties school districts face when confronted with problems such as the one exhibited in this case.

I believe our precedent severely impedes the ability of school districts to ensure the welfare and safety of their students. Although there is, or should be, a strong public policy in favor of the proper supervision and education of the children of the Commonwealth, it appears, in this case, not to have been shown to be sufficiently "well-defined, dominant and ascertain[able] by reference to ... laws and legal precedents and not from general considerations of supposed public interests," as required by the Supreme Court's decision in *Westmoreland Intermediate Unit # 7 v. Westmoreland Intermediate Unit # 7 Classroom Assistants Educational Support Personnel Association*, 595 Pa. 648, 662, 939 A.2d 855, 866 (2007). The Supreme Court, in *Westmoreland*, set a high and exacting standard to show a public policy that can provide an exception to the essence test. In this case, however, the District did not articulate a policy sufficient to meet the requirements set out in *Westmoreland*. It is possible that, under the facts of this case, it would have been impossible to do so. However, because such a policy was not sufficiently shown, I am compelled to concur with the majority.