**UNITED SCHOOL DISTRICT,**
**Appellant,**

v.

**UNITED EDUCATION ASSOCIATION**
**and Grievant.**

Commonwealth Court of Pennsylvania.

Argued June 7, 2000.
Decided Aug. 6, 2001.

---

Andrew J. Kennedy, Altoona, for appellant.

William K. Eckel, Johnstown, for appellees.

Before KELLEY, Judge, LEADBETTER, Judge, LEDERER, Senior Judge.

LEADBETTER, Judge.

The United School District (School District) appeals from the order of the Court of Common Pleas of Indiana County, which denied its petition to vacate an arbitration award. In resolving the issue raised on appeal, we are confronted with an unresolved question concerning the appropriate standard by which we review a claim that an arbitrator's consideration of the evidence was flawed by an erroneous legal ruling. Because we determine that notwithstanding the error, the ultimate award draws its essence from the parties' collective bargaining agreement (CBA), we affirm.

Prior to 1985, the CBA provided that an Association member was entitled to receive payment for accumulated days of unused sick leave upon retirement. In negotiating the 1985 CBA, the School District proposed an early retirement incentive bonus. The CBA ultimately ratified by the parties included the early retirement incentive and modified the earlier sick leave buy back benefit program. Specifically, Schedule B (entitled "Other Member Benefits"), Section 4 of the 1985 CBA provided:

> Upon termination of employment by reason of retirement, each member shall be paid for each day of unused sick leave accumulated during his tenure as follows:
>
> 1985–86 $13.00 per day to a maximum of 200 days

1986–87 $14.00 per day to a maximum of 200 days

1988–89 $15.00 per day to a maximum of 200 days

R.R. 279a. Section 11 of Schedule B detailed the voluntary early retirement incentive. In pertinent part, Section 11 provided as follows:

> Benefits:
>
> 1. Professional employees who meet the eligibility requirements outlined above shall receive a lump sum retirement payment according to the following schedule:
>
> . . . .
>
> 5. Employees who elect the benefit offered by this section shall be entitled to the dollar amount listed above except where the payment due a retiring employee under Schedule 'B', Section 4 exceeds said amount. In such an instant [sic], the retiring employee shall be entitled to only the payment due under Schedule 'B', Section 4.

R.R. 281a. Retirees were entitled to a maximum benefit of $10,000 under the Voluntary Early Retirement Plan. The 1989, 1993, and 1997 CBAs contained similar language with some monetary modifications. During the school years 1985–86 through 1997–98, 15 teachers elected to take advantage of the early retirement incentive. Although 11 of the 15 retirees had unused sick days, they did not receive any payment for their unused time. Moreover, the early retirement incentive for each eligible retiree exceeded the value of his/her accrued sick days. Five other retirees who did not qualify for the early retirement incentive were paid for their accumulated sick days upon retirement.

In 1998, the Association raised the issue of whether retirees were entitled to receive both the early retirement incentive

and payment for their unused sick days. The School District responded that both benefits could not be received upon retirement, as a result of which, the Association filed a grievance. During the arbitration that followed, the School District argued[1] that: (1) Sections 4 and 11 of Schedule B were ambiguous; (2) binding past practice demonstrated that retirees had never received both benefits; (3) it consistently maintained throughout negotiations that retirees were entitled to one benefit or the other, but not both; and (4) a mutual mistake occurred, requiring reformation of the CBA.

In support of its position that a retiree was not entitled to both the early retirement incentive and the unused sick days benefit, the School District presented the testimony of its chief negotiator, Robert Gaylor. Gaylor testified that throughout the negotiations, he maintained that no "pyramiding" of benefits should occur and that retirees should have a choice of either the retirement incentive or the sick day benefit. Gaylor's handwritten notes from the negotiation of the two benefits were introduced into evidence. The School District also introduced into evidence a document entitled "Negotiated Changes to Agreement Between United School District and United Education Association July 1, 1985 to June 30, 1989." R.R. 308a. According to the School District on appeal, this document contained the changes forming the basis for the ratified CBA and it was the only document available when the parties voted on the new CBA. With respect to the early retirement incentive, this document, which differs from the CBA that was ultimately memorialized, provided:

Employees who elect this incentive plan shall not be entitled to receive the payment for unused sick leave as provided in Schedule 'B', Section 4 unless the payment would exceed the bonus set forth above at which point the payment for unused sick leave shall be received.

R.R. 310a. According to the arbitrator, Gaylor testified that he wrote "No Pyramiding!" in the margin next to the above provision to reiterate that retirees had to select either the early retirement incentive or the unused sick day benefit, but could not receive one on top of the other.[2]

After hearings, the arbitrator concluded that the CBA provided that retirees who elected the early retirement bonus were also entitled to receive payment for their unused sick days. In reaching this conclusion, the arbitrator found the CBA to be clear and unambiguous. Consequently, he rejected the School District's argument that principles of contract interpretation applied, requiring that he consider the parol and documentary evidence presented by the School District.

The arbitrator also refused to consider the School District's evidence that the failure to award both benefits to a retiree in the past demonstrated that both parties interpreted the CBA to provide that both benefits could not be received upon retirement. According to the arbitrator, there was no evidence that a retiree had asked for both benefits prior to the current dispute. The arbitrator also noted that although it was possible under the prior CBAs for accumulated sick leave to have a value in excess of the early retirement incentive, the current CBA provided a benefit schedule which included a maximum

---

1. Due to the lack of a transcript, our summary of the School District's arguments stems solely from the arbitrator's decision.

2. The Negotiated Changes document submitted into evidence does reflect the notation "No Pyramiding!" as well as someone's initials.

sick day value of $9,000, which was less than the minimum early retirement incentive of $10,000. Therefore, under the 1997 CBA, there could not be a circumstance where the "payment due a retiring employee under [Schedule] B, Section 4 exceeds said (incentive) amount." Accordingly, the arbitrator concluded that the retirees who elected the early retirement benefit offered by Section 11 were also entitled to the value of their unused sick leave.

Finally, the arbitrator rejected the School District's argument that the failure of the CBA to match the language appearing in the "Negotiated Changes" document demonstrated that a mutual mistake had occurred. The arbitrator rejected this argument on the grounds that the Association did not acknowledge any mistake with respect to the CBA.

The School District filed a petition to vacate the arbitrator's award with the court of common pleas. The trial court concluded that the arbitration award derived its essence from the CBA and denied the petition to vacate. The instant appeal followed.

On appeal, the School District argues that the arbitrator's award does not draw its essence from the CBA because the arbitrator ignored evidence that (1) the CBA [specifically Section 11, paragraph 5] was altered after the vote occurred and (2) the CBA fails to represent the parties' intentions at the time they voted on the proposed changes to the CBA. In addition, the School District contends that the arbitrator erred as a matter of law in excluding its evidence on the basis of the parol evidence rule. Finally, the School District contends that the arbitrator erred as a matter of law in concluding that a mutual

mistake could not have occurred absent the Association's admission of one.

▪ We first note our rejection of the School District's arguments based upon a scrivener's mistake in the language of the 1985–88 CBA. Even if that CBA failed to accurately reflect the agreement negotiated by the parties, it is far too late to reform the 1985 CBA at this point. Not only did the School District fail to make any effort to modify its language when that document was in effect, it negotiated and ratified two subsequent agreements containing the same pertinent terms.[3] Accordingly, the arbitrator properly focused, as must this court, upon the language of the 1997 CBA which controls the instant grievance, and not upon language the School District believes should have been included in the 1985 document.

We turn to the remaining issue, to wit, whether the arbitrator erred in refusing to consider negotiating history and the custom and practice of the parties in interpreting the 1997 agreement. This issue carries with it the subsidiary question of what standard of review we apply in its consideration. With respect to the substantive issue, we do not write upon a clean slate. In *Greater Nanticoke Area School District v. Greater Nanticoke Area Education Association,* 760 A.2d 1214 (Pa. Cmwlth.2000), we were faced with the mirror-image argument that the terms of a CBA were unambiguous and, therefore, that the arbitrator had erred as a matter of law in considering extraneous evidence in interpreting the agreement. Based upon our review of several opinions of our Supreme Court, we noted that unlike the trial court setting in which the judge will admit extraneous evidence for the jury's

---

**3.** Of course, while the 1985 negotiating history may not be used to reform the 1997 CBA, it

may be relevant to its interpretation.

consideration only after a determination that a contract is ambiguous, the distinction between ambiguous and unambiguous agreements is of no evidentiary significance in the labor arbitration context. *Id.* at 1217–18. *See also Community College of Beaver County v. Community College of Beaver County, Soc'y of the Faculty (PSEA/NEA)*, 473 Pa. 576, 592–94, 375 A.2d 1267, 1274–75 (1977). On the contrary, we determined that:

> [W]hile the common law of contracts allows the factfinder to consider all evidence relevant to the determination of the parties' intent only if the court has found the contract language to be ambiguous, the evidence properly considered by the arbitrator as factfinder is not so limited. *See School Dist. of Allentown v. Hotel and Restaurant Employees*, 654 A.2d 86, 89 (Pa.Cmwlth. 1995). As our Supreme Court has most recently noted:

> > [W]hen discerning the intent of the parties, the arbitrator is not confined to the express terms of the collective bargaining agreement. Our court has stated that an arbitrator's award may draw its essence from the collective bargaining agreement if the arbitrator's "interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention."

*Danville Area Sch. Dist. v. Danville Area Educ. Ass'n, PSEA/NEA*, 562 Pa. 238, 248, 754 A.2d 1255, 1260 (2000) (citations omitted).

Moreover, as was pointed out in the concurring opinion to *Delaware County v. Delaware County Prison Employees Independent Union*:

> In further support of a broad approach to ascertaining the intent of the parties, it should be noted that the United States Supreme Court has determined that in addition to general contract construction, a collective bargaining agreement must be viewed in the context of the "industrial common law." Specifically, in *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581–82, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409, 1417 (1960), the Court noted that "[t]he labor arbitrator's source of law is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it."

552 Pa. 184, 195 n. 5, 713 A.2d 1135, 1141 n. 5 (1998) (Cappy, J. concurring).

Finally, in *Danville*, the court noted:

> More specifically with regard to past practice, as stated in Frank and Edna Asper Elkouri's seminal work on arbitration, *How Arbitration Works*,

> > Unquestionably custom and past practice constitute one of the most significant factors in labor-management arbitration. Evidence of custom and past practice may be introduced for any of the following major purposes: (1) to provide the basis for rules governing matters not included in the written contract; (2) to indicate the proper interpretation of ambiguous contract language; or (3) to support allegations that clear language of a written contract has been amended by mutual action or agreement.

> Elkouri and Elkouri, *How Arbitration Works* 437 (4th ed.1988).

*Danville*, 562 Pa. at 248 n. 2, 754 A.2d at 1260 n. 2.

760 A.2d at 1218–19. Having found that the arbitrator properly considered all relevant evidence, we applied the essence test

as explained in *State System of Higher Education (Cheyney University) v. State College University Professional Association (PSEA–NEA),* 560 Pa. 135, 743 A.2d 405 (1999):

> The arbitrator's award must draw its essence from the collective bargaining agreement. Pursuant to the essence test as stated today, a reviewing court will conduct a two-prong analysis. First, the court shall determine if the issue as properly defined is within the terms of the collective bargaining agreement. Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement. That is to say, a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement.

*Id.* at 149–50, 743 A.2d at 413 (footnotes omitted). Or, as stated in *Beaver County:*

> [W]here a task of an arbitrator, PERA or otherwise, has been to determine the intention of the contracting parties as evidenced by their collective bargaining agreement and the circumstances surrounding its execution, then the arbitrator's award is based on a resolution of a question of fact and is to be respected by the judiciary if "the interpretation can in any rational way be derived from the agreement, viewed in light of *its language, its context, and any other indicia of the parties intention . . . .*"

473 Pa. at 593–94, 375 A.2d at 1275 [quoting *Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123, 1128 (3d Cir.1969) (emphasis added) ]. Based upon this standard, we affirmed the award.

■ Here, however, the School District argues that the arbitrator erred in *refusing* to consider both the negotiating history of the 1985 CBA and the custom and practice of the parties over the next thirteen years, during which essentially the same contract language was twice ratified. Based upon the cases cited above, we agree. As Justice Brennan explained in his concurring opinion in *United Steelworkers of America v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960):

> The meaning of the arbitration promise is not to be found simply by reference to the dictionary definitions of the words the parties use, or by reference to the interpretation of commercial arbitration clauses. Words in a collective bargaining agreement, rightly viewed by the Court to be the charter instrument of a system of industrial self-government, like words in a statute, are to be understood only by reference to the background which gave rise to their inclusion.

*Id.* at 570, 80 S.Ct. 1343.

This conclusion, however, does not dispose of the issue, for the question remains what standard of review this court should apply in addressing the erroneous legal determination. We have found no direct authority in either the Uniform Arbitration Act (UAA) [4] or the caselaw to specify the manner in which we should deal with this

---

4. 42 Pa.C.S. §§ 7301—7362. Our Supreme Court determined in *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA),* 473 Pa. 576, 375 A.2d 1267 (1977), that Section 11(d) of the Arbitration Act of April 5, 1927, P.L. 381, formerly 5 P.S. § 171(d), re-

pealed by the Act of October 5, 1980, P.L. 693, applied to arbitration conducted pursuant to collective bargaining agreements under the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101–1101.2301. 473 Pa. at 585, 375 A.2d at 1271. While the Arbitration Act

sort of erroneous ruling. The UAA provides that on application of a party, the court shall vacate an arbitration award where:

> the arbitrator[ ] ... refused to hear evidence material to the controversy or otherwise so conducted the hearing ... as to prejudice substantially the rights of a party....

42 Pa.C.S. § 7314(iv).[5] Had the arbitrator refused to allow the School District to present its evidence concerning custom and practice and negotiating history of the parties, the School District would have been substantially prejudiced and we would have no choice but to vacate the award. Here, however, the arbitrator admitted the evidence and recounted it in detail in his opinion. He simply held it to be irrelevant, stating that "such parole [sic] evidence cannot be considered to contradict clear and unambiguous contract language." [Op. at p. 10]

■ Under these circumstances, that is, where a legal ruling, albeit erroneous, has not deprived a party of a fair and complete opportunity to present his case, we believe that we are neither bound by the error nor authorized to impose a remedy for the error itself. Rather, the correct standard of review remains the essence test, although in applying the test we need not view the evidence from the perspective of the arbitrator's flawed legal reasoning.[6]

of 1927 was repealed three years after the decision in *Beaver County*, it was superseded by the UAA. *Pennsylvania State Educ. Ass'n v. Appalachia Intermediate Unit 08*, 505 Pa. 1, 5, 476 A.2d 360, 362 (1984).

5. The full text of 42 Pa.C.S. § 7314(a)(1) provides that on the application of a party, the court shall vacate the arbitration award where:

(i) the court would vacate the award under section 7341 (relating to common law arbitration) if this subchapter were not applicable;

(ii) there was evident partiality by an arbitrator appointed as a neutral or corruption or misconduct in any of the arbitrators prejudicing the rights of any party;

(iii) the arbitrators exceeded their powers;

(iv) the arbitrators refused to postpone the hearing upon good cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section 7307 (relating to hearing before arbitrators), as to prejudice substantially the rights of a party; or

(v) there was no agreement to arbitrate and the issue of the existence of an agreement to arbitrate was not adversely determined in proceedings under section 7304 (relating to court proceedings to compel or stay arbitration) and the applicant-party raised the issue of the existence of an agreement to arbitrate at the hearing.

6. Our decision in this regard is supported by the manner in which our Supreme Court has dealt with claims of error fitting within the specific terms of § 7302(d)(2) of the UAA, which provides:

[A] court in reviewing an arbitration award ... shall ... modify or correct the award where the award is contrary to law and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict.

42 Pa.C.S. § 7302(d)(2). In *Mifflinburg Area Education Association v. Mifflinburg Area School District*, 555 Pa. 326, 724 A.2d 339 (1999), our Supreme Court was confronted with an arbitration award which it found to be violative of Section 1121 of the Pennsylvania School Code, Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 11–1121. The court noted that the School Code was incorporated by law into all collective bargaining agreements under PERA. It then analyzed the relevant provisions and found that the Code, properly interpreted, protected the grievants' right to credit for certain prior service. Since the arbitrator had interpreted the CBA to deny such credit, the court found the arbitration award did not draw its essence from the CBA. Similarly, in *City of Easton v. American Federation of State, County and Municipal Employees*, 562 Pa. 438, 756 A.2d 1107 (2000), our Supreme Court found an arbitration award to be based upon a legally errone-

Put another way, for purposes of our review, it makes no difference whether the arbitrator has refused to consider evidence because of an erroneous legal ruling, or has simply as fact-finder attached no significance to it. In either situation, we must review the entire record, including any evidence which the arbitrator has credited but disregarded, to determine whether "the interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention...." *Beaver County,* 473 Pa. at 594, 375 A.2d at 1275.[7]

■ Applying this standard, although we might disagree with the award, or even find it to be manifestly unreasonable[8] in light of the fact that the arbitrator's negotiating history and the parties' thirteen-year custom and practice thereafter, we cannot say that it is irrational. Therefore, we are constrained to affirm the order of the court of common pleas.

The decision in this case was reached before the expiration of the appointment of Senior Judge Lederer to the Commonwealth Court by the Supreme Court of Pennsylvania.

### ORDER

AND NOW, this 6th day of August, 2001, the order of the Court of Common Pleas of Indiana County in the above captioned matter is AFFIRMED.

ous predicate, i.e., that the City had bargained away its right to terminate an employee who committed theft. The court reviewed caselaw holding that a city "could not relinquish those powers which were essential to its ability to properly discharge its various functions, including the power to terminate those employees who steal from the City itself, or steal from others working for the City." *Id.* at 447, 756 A.2d at 1111. It then held that, "In light of the [Arbitration] Board's failure to take into account the fact that the City did not and could not bargain away its right to terminate a proven thief ... it simply cannot be said that the Board's decision awarding Daiello reinstatement was rationally derived from the collective bargaining agreement between the Union and the City." *Id.* While there were vigorous dissents in both *Mifflinburg* and *City of Easton,* taking issue with the majority's resolution of the underlying legal question and of its *application* of the essence test, there was no quarrel with the basic premise that the standard of review was the essence test,

nor that the test was to be applied in light of the correct interpretation of the law.

7. As noted above, the court in *State System of Higher Education (Cheyney University) v. State College University Professional Association (PSEA–NEA),* 560 Pa. 135, 743 A.2d 405 (1999), set forth a two part test. However, here, as in *Mifflinburg* and *Easton,* there is no dispute regarding the first prong of the essence test, *i.e.,* that the disputed issue falls within the terms of the CBA.

8. The court in *Cheyney University* rejected both what it characterized as the "extreme deference" standard of *Leechburg Area School District v. Dale (Leechburg II),* 492 Pa. 515, 424 A.2d 1309 (1981), under which "as long as the issue is covered by the agreement, the inquiry is at end," and "a standard of review looking to the 'reasonableness' of the arbitrator's award." 560 Pa. at 148–50, 743 A.2d at 412–13.