**COUNTY OF MONROE, Appellant**

v.

**TEAMSTERS LOCAL 229.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 7, 2008.

Decided May 14, 2008.

Thomas L. Heimbach, Allentown, for appellant.

Robert D. Mariani, Scranton, for appellee.

BEFORE: LEADBETTER, President Judge, and SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY President Judge LEADBETTER.

The County of Monroe appeals from the order of the Court of Common Pleas of Monroe County (common pleas), which denied its petition to vacate the arbitration award that changed the job classification of the grievant, a Magisterial District Judge employee, and increased her pay rate accordingly. The County contends that the award does not draw its essence from the Collective Bargaining Agreement (CBA) because it contravenes both the County's exclusive right to determine staffing and its established staffing policies. The County also contends that the award impedes its ability to discharge its essential functions in violation of the "core function test." For the reasons which follow, we affirm.

The essential facts are not disputed. In 2003, grievant, Heather Harrison–Smith, was hired to work as a Labor Grade 7

Technician in Magisterial District Judge Clarence Dennis' chambers. Approximately twenty months later, in October 2004, Judge Dennis wrote to the County's Magisterial District Judge Administrator, seeking to change grievant's classification to a Labor Grade 10 Advanced Technician. The Administrator denied the request, indicating that the County's policy is "one Class 10 Technician per office." [1] Further correspondence followed and a grievance was ultimately filed, wherein grievant essentially asserted that she is working at the Advanced Technician level and requested that her classification be changed to Grade Level 10 and that she be paid accordingly.

With respect to the applicable CBA, it bears noting that Article 6 of the CBA provided the County with typical management rights. Interestingly, section 4 of that article provided that: "[The] Management Rights Article does not supersede any other article.... Where a conflict in interpretation or application between this Article [Management Rights] and any other article of the [CBA] arises, such other article shall prevail over this Management Rights Article." Reproduced Record at 14–15a. In addition, Article 16, germane to the arbitrator's ultimate award, provided:

## ARTICLE 16

### Job Evaluation

Should an employee or [Union] at any time believe that the duties of any existing job covered by this Agreement have significantly changed, ... or should the Employer combine job functions of one or more of the jobs currently existing within any of the aforementioned Offices, [including the District Justice Office,] the Employer agrees to evaluate the job and provide [the Union] with its assessment of the salary to be allocated to such job. Should [the Union] disagree with the salary assigned to such job by the Employer, it may seek review of the Employer's determination of salary through the grievance/arbitration provisions of this Agreement. In the event that such a job evaluation/classification issue is submitted to arbitration, the Arbitrator shall only have jurisdiction to decide whether the Employer's evaluation of the job was done in accordance with the Employer's then current classification system. If the Arbitrator finds that the Employer had evaluated the job consistent with its then current classification system, the Employer's evaluation shall be final. If the Arbitrator finds that the Employer had not evaluated the job consistent with its then current job classification system, the Arbitrator shall have the authority to evaluate the job under the classification system and to set the pay rate for the job consistent with the bargaining unit's pay scale for the applicable classification....

*Id.* at 24a.

Pursuant to the CBA, the matter was submitted to arbitration.[2] Notably, at the

---

1. According to the evidence presented at the arbitration, each chambers is generally staffed with one Advanced Technician and two Technicians. In October 2004, Judge Dennis had two Advanced Technicians and one Technician. Judge Dennis was not the only judge with more than one Advanced Technician.

2. The arbitrator captioned the relevant issues as whether "the County combine[d] the job functions of Labor Grade 7 (Tech) position and the Advanced Tech (Labor Grade 10) position within the grievant's job," and whether "the grievant's job classification [should] be changed from a Labor Grade 7 to a Labor Grade 10 and her rate adjusted ac-

hearing, grievant testified that, she performs duties of an Advanced Technician, she performs the same duties that the other Advanced Technicians in the office perform, and she performs the duties of both the Technician and the Advanced Technician when working by herself. Judge Dennis testified, in turn, that grievant performs duties of an Advanced Technician, her responsibilities are a combination of a Technician and Advanced Technician and that, essentially all three employees do the same job. The County's witnesses emphasized that the County's policy is to staff each judge's chambers with only one Advanced Technician. The County also indicated that a similar promotion request in the past had been denied because the judge involved already employed an Advanced Technician in his chambers.

The arbitrator found that the County failed to evaluate the job as required by Section 16 of the CBA and, therefore, he had the authority to evaluate grievant's job. Based upon the evidence, the arbitrator found that her duties had been combined in that she performed all of the duties of a Technician and Advanced Tech-

nician. Accordingly, the arbitrator found that grievant's job classification should be changed to a grade 10 and that she should be paid the rate of that class. In doing so, he rejected the County's argument that its policy prevailed over the terms of the CBA. Common pleas denied the County's subsequent petition to vacate the award.[3] The present appeal followed.

On appeal, the County does not dispute that the arbitrator had authority under the CBA to evaluate grievant's job duties and it does not take issue with the finding that grievant performed the duties of the Grade Level 10 Advanced Technician. Rather, the County argues that the award is not rationally derived from the CBA because the arbitrator failed to consider that as part of its reserved managerial rights, it established a policy that each magisterial district judge was limited to having only one Advanced Technician on staff.[4] The County further contends that the award is irrational because Judge Dennis' chambers[5] now has three Advanced Technicians (Labor Grade 10) and no lower level Technicians (Labor Grade 7). Finally, the County argues that the award infringes on its core function of staffing magisterial

---

cordingly beginning 1/1/05." Opinion and award at 2.

3. Common pleas rejected the County's argument that the arbitrator erred in failing to consider its management rights (recognized in Article 6 of the CBA), noting that section 4 of that article specifically provided that any conflict between Article 6 and another CBA provision would be resolved in favor of the other article. In addition, common pleas rejected the contention that the award delegated staffing and job classification, two of the County's core functions, to the magisterial district judges.

4. To support its argument that the arbitrator erred in failing to consider its past practice, the County refers to Frank and Edna Asper Elkouri's arbitration treatise, *How Arbitration Works*, which states:

Unquestionably custom and past practice constitute one of the most significant factors in labor-management arbitration. Evidence of custom and past practice may be introduced for any of the following major purposes: (1) to provide the basis for rules governing matters not included in the written contract; (2) to indicate the proper interpretation of ambiguous contract language; or (3) to support allegations that clear language of a written contract has been amended by mutual action or agreement.

Elkouri and Elkouri, *How Arbitration Works*, 437 (4th ed.1988), quoted in *United Sch. Distr. v. United Educ. Ass'n*, 782 A.2d 40, 45 (Pa.Cmwlth.2001).

5. Judge Dennis has since retired.

district judge's offices. We conclude these contentions lack merit.

■ It is well-settled that our standard of review in this matter is the "essence test," a standard that requires great deference to an arbitrator's interpretation of the CBA. *See, e.g., Westmoreland Intermed. Unit #7 v. Westmoreland Intermed. Unit #7 Classroom Asst. Educ. Support Pers. Ass'n, PSEA/NEA,* 595 Pa. 648, 939 A.2d 855 (2007); *State Sys. of Higher Educ. (Cheyney Univ.) v. State Coll. Univ. Prof'l Ass'n (PSEA–NEA),* 560 Pa. 135, 743 A.2d 405 (1999). As recognized by both common pleas and the parties, the test is two-pronged, first requiring a determination as to whether the issue as properly defined is within the terms of the CBA, and second, if it is, whether the arbitrator's interpretation of the CBA is rationally derived therefrom. *Westmoreland,* 595 Pa. at 661–62, 939 A.2d at 863. Emphasizing the amount of deference required by this standard, our Supreme Court recently opined:

> The standard is one characterized by great deference. The arbitrator's award must be respected by the judiciary if the interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention. . . .
>
> . . . .
>
> [A] court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the [CBA]. Regarding a review for reasonableness, we rejected such review, finding that it would invite a reviewing court to substitute its own interpretation of the contract language for that of the arbitrator. Therefore, we instructed that a court should not engage in merits review of the matter. Indeed, after our reaffirmation of the circumscribed es-

sence test we made it eminently clear that the essence test does not permit an appellate court to intrude into the domain of the arbitrator and determine whether an award is manifestly unreasonable.

*Id.* at 660–61, 939 A.2d at 862–63 (quotations and citations omitted).

■ Here, the arbitrator admitted the County's evidence that it had a policy and practice that magisterial district judges were limited to one Advanced Technician per office, but obviously concluded that the unwritten policy, even if subsumed in the management rights clause, could not preclude enforcement of a clear CBA provision. Such contractual interpretation, even if it were erroneous, could not be remedied within the confines of the essence test, because the record reveals that the arbitrator's interpretation is rationally derived from the agreement. *See United Sch. Distr. v. United Educ. Ass'n,* 782 A.2d 40 (Pa.Cmwlth.2001) (holding that while arbitrator erred in failing to consider negotiating history and past practice, essence test required deference to award where it was not irrational).

■ We also reject the County's contention that the award

> requir[es] the County to completely restructure employees at a Magisterial District Judge's office [and] infringes on the County's duty to carry out essential functions it provides to the citizens of the County. . . . In order to meet [its core function of staffing in an efficient and cost-effective manner,] the County maintains a policy of limiting Grade 10 technicians to only one per [Judge's] office.

County's appellate brief at 14. This argument requires little discussion.

In a series of cases prior to *Westmoreland,* the appellate courts of this Common-

wealth articulated and expanded upon the "core function" exception to the essence test. That exception, as developed, has been described both as a contractual limitation, in that an employer entering into a CBA cannot relinquish "those powers which [are] essential to its ability to properly discharge its various functions," [6] and as limitation on an arbitrator's construction of a CBA, to wit: "[The] usual degree of deference to be accorded an arbitrator's award is moderated in a situation in which the arbitrator's interpretation of the agreement led to the governmental employer relinquishing essential control over the public enterprise, i.e., those powers essential to its ability to discharge its functions." *Greene County v. Dist. 2, United Mine Workers of Am.*, 578 Pa. 347, 361, 852 A.2d 299, 308 (2004), abrogated by *Westmoreland.*

In *Westmoreland*, however, after noting the short-comings of the core function exception, our Supreme Court abandoned it, adopting instead the federal public policy exception. Specifically, the court opined:

Considering the General Assembly's mandate of final and binding arbitration to resolve disputes under [the Public Employe Relations Act] and the benefits of deferential judicial review, but keeping in mind the important services entrusted to public entities, which are responsible for the health, safety, and welfare of our citizens, today we reaffirm the two-prong essence test as articulated in *Cheyney University.* We conclude, however, that the essence test should be subject to a narrow exception by which an arbitrator's award will be vacated if it is violative of the public

policy of the Commonwealth.... We believe that such a public policy exception constitutes a reasonable accommodation of the sometimes competing goals of dispute resolution by final and binding arbitration and protection of the public weal and is more consistent with our recent case law in this area. Thus, we reject the core functions exception to the essence test and supplant it with the public policy exception to the essence test.

More specifically, we hold that upon appropriate challenge by a party, a court should not enforce a grievance arbitration award that contravenes public policy. Such public policy, however, must be well-defined, dominant, and ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests.

595 Pa. at 665–66, 939 A.2d at 865–66.

■ Here, but for *Westmoreland*, we would have concluded that the award did not lead to the County's relinquishing control over its public enterprise and, therefore, did not violate the core function test. However, in light of *Westmoreland*, whether an award impedes discharge of the employer's function(s) is no longer the test or a proper consideration on review. Following the Supreme Court's recent pronouncement, we are limited to determining whether an award that is rationally derived from the CBA contravenes a public policy. Because this change in law occurred after appellate briefing, the parties have not raised nor addressed this issue. We note, however, that the County's arguments do not implicate a well-defined,

---

**6.** *See Westmoreland*, 595 Pa. at 663, 939 A.2d at 864 [quoting *City of Easton v. AFSCME, Local 447*, 562 Pa. 438, 446–47, 756 A.2d 1107, 1111 (2000), abrogated by *Westmoreland Intermed. Unit #7 v. Westmoreland Intermed. Unit #7 Classroom Asst. Educ. Support Pers. Ass'n, PSEA/NEA*, 595 Pa. 648, 939 A.2d 855 (2007)]. *See also Philadelphia Housing Auth. v. AFSCME*, 900 A.2d 1043, 1046 (Pa.Cmwlth.2006), vacated and remanded in light of *Westmoreland*, —— Pa. ——, 941 A.2d 1257 (2008).

dominant public policy, recognized by precedent, and we cannot envision any public policy that conflicts with the award. Therefore, on the facts established in this record, we see no need to remand for further proceedings or consideration by common pleas.

Accordingly, the order is affirmed.

## ORDER

AND NOW, this 14th day of May, 2008, the order of the Court of Common Pleas of Monroe County in the above captioned matter is hereby AFFIRMED.