**CITY OF PITTSBURGH, Appellant**

v.

**PITTSBURGH JOINT COLLECTIVE BARGAINING COMMITTEE.**

Commonwealth Court of Pennsylvania.

Argued May 5, 2004.

Decided June 21, 2004.

---

Diego Correa, Pittsburgh, for appellant.

Howard Grossinger, Pittsburgh, for appellee.

BEFORE: COLINS, President Judge, and LEADBETTER, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge LEADBETTER.

The City of Pittsburgh (City) appeals from the order of the Court of Common Pleas of Allegheny County (common pleas) affirming an arbitrator's award that reinstated Carl Huntley to employment in the Department of Works (Department) conditioned on his submission to and satisfactory results of periodic drug and alcohol tests for twelve months.

Huntley had been employed by the City for thirteen years when in September of 2001, while traveling through downtown Pittsburgh to a work assignment, he asked his fellow workers to drop him off to do a brief personal errand. Huntley did not return to the truck and his co-workers returned to work without him. Huntley also failed to report to work the following day. After leaving his co-workers, Huntley stole three DVDs from a local store, and was arrested and charged with theft. Huntley eventually pled no contest to the

charges. When he returned to work and received questions about his unreported absence, Huntley lied. He stated in a written response to the questions that he had stopped to pay a bill and his co-workers did not wait. About one week later, after learning of Huntley's theft, the City imposed a five-day suspension pending discharge. In a written response, Huntley denied culpability. However, in yet a third written response, Huntley accepted responsibility and sought admission into the Employee Assistance Program (EAP) due to alcohol and drug addiction. Without acknowledging receipt of the last written response, which Huntley hand-delivered on October 17, the City discharged him effective immediately via a letter dated October 18 and received by Huntley on October 19.

Following completion of the City's grievance process, Huntley requested arbitration. The collective bargaining agreement (CBA) provided, "Any grievance . . . not satisfactorily settled shall be submitted to arbitration . . . . the decision of the arbitrator so rendered shall be final and binding . . . . the arbitrator shall not have the right to add to, subtract from, modify or disregard any of the terms or provisions of this agreement." CBA Section 6. The CBA contained a "just cause" provision, stating in relevant part "The City shall have the right . . . to discharge . . . employees. . . . It is understood, however, that the City shall not discipline or discharge an employee except for just cause." CBA Section 3. The CBA also provided for an employee assistance program that the City could, but was not obligated to, offer in lieu of discharge. The parties stipulated that the issue before the arbitrator was whether the City discharged Huntley for just cause. During the hearings, the arbitrator also identified as an arbitrable issue whether the refusal to admit Huntley

into the EAP was the product of discrimination.

The arbitrator found that admission into the EAP depended on Huntley's prompt admission of responsibility, which he failed to make, and that no evidence supported the discrimination claim. As to just cause for discharge, the arbitrator found that the City had not, as it claimed, established and notified employees of a policy of no tolerance for criminal activity and that under the CBA, the City retained the power to discharge but only for just cause. The arbitrator further concluded that Huntley's discharge was not mandated as a matter of law because Huntley's crime did not impair the Department of Works in performing its public function or harm the Department's public reputation. The arbitrator premised this conclusion on finding that Huntley had a job involving very little interaction with the public. Further, the arbitrator found that the Department took a somewhat cursory approach to investigating the incident and then abruptly discharged Huntley without inquiry into mitigating circumstances, while Huntley failed to readily accept responsibility and promptly seek assistance for his addictions.

Based on these findings and conclusions, the arbitrator ruled:

> The collective bargaining agreement does not create an exception to the "just cause" rule for employees committing a crime while on City time, nor does the contract prevent the modification of a disciplinary penalty found to be too severe. Since the arbitrator is not estopped from modifying a disciplinary penalty, he implicitly has the authority to make such a modification when all the circumstances are considered.

> A review of the circumstances present in this matter discloses that the grievant left his job early, failed to punch out,

and committed a petit theft. The victim sustained no economic loss and violence was not suggested. The grievant admitted to his wrongdoing in the judicial proceedings, but not to the City. His prior theft conviction does not establish a pattern of conduct, and there was no evidence to suggest that he could not resume his role as a good and dependable employee if reinstated.

Under the circumstances, the arbitrator concludes that a discharge of an otherwise dependable 13–year employee was too severe and should be modified. A temporary suspension would have been adequate.

The grievant has been out of work and without pay and benefits for over 1 year. That is a harsh penalty in light of the circumstances. However, the arbitrator declines to award back wages....

The City appealed to common pleas, which affirmed, citing *System of Higher Education (Cheyney University) v. State College University Professional Association,* 560 Pa. 135, 743 A.2d 405 (1999) and *City of Easton v. American Federation of State, County and Municipal Employees,* 562 Pa. 438, 756 A.2d 1107 (2000) in a memo without additional discussion. On appeal to our court, the City contends that Huntley's admitted commission of a minor retail theft of three DVDs while on duty constituted just cause for discharge and, therefore, reinstatement is not rationally derived from the CBA. The City points in particular to *City of Easton* for the principle that a public employer has an absolute right to discharge an employee for criminal activity during work hours. The union asserts that neither *City of Easton* nor any other case establishes that a public employer has unfettered discretion to terminate an employee for the commission of a crime where the crime was not job related

and did not impair the employer's ability to perform its public duties.

Our standard of review is the "essence test," a standard calling for great deference to the arbitrator's interpretation of the CBA. *See, e.g., Cheyney University,* 560 Pa. at 145–50, 743 A.2d at 410–13. The essence test encompasses a two-pronged analysis—first, whether the issue as properly defined is within the terms of the CBA and, if so, whether the arbitrator's interpretation of the CBA, which is a question of fact, can rationally be derived "from the agreement, viewed in the light of its language, its context and any other indicia of the parties' intention...." *Id.* at 146, 743 A.2d at 411 [quoting *Cmty. Coll. of Beaver County v. Cmty. Coll. of Beaver County, Soc'y of the Faculty (PSEA/NEA),* 473 Pa. 576, 594, 375 A.2d 1267, 1275 (1977)]. In the present case, the parties correctly agree that the issue of whether Huntley's misconduct constitutes just cause for discharge comes within the terms of the CBA. The focus of our review is the second prong, which tests whether the arbitrator's interpretation of the CBA is not rationally derived therefrom, either because it is the product of legal error or because it lacks evidentiary support in the terms of the agreement, its context and other indicia of contractual intent.

There is no dispute that Huntley committed a theft during work hours. He left his co-workers, committed the theft and did not return to work for the remainder of the day and the following day, without either clocking out or reporting his absence. The crux of the dispute is whether, as a matter of law, the City always retains the unfettered right to fire an employee who commits a crime during work hours. This contention arises from a series of cases in which our Supreme Court announced that a public employer lacks capacity to bargain away its power to

fire an employee who commits certain types of misconduct. The court's decisions in *Philadelphia Housing Authority v. Union of Security Officers,* 500 Pa. 213, 455 A.2d 625 (1983), *County of Centre v. Musser,* 519 Pa. 380, 548 A.2d 1194 (1988) and *Pennsylvania Liquor Control Board v. Independent State Stores Union (ISSU),* 520 Pa. 266, 553 A.2d 948 (1989) mark the emergence of the principle.

In *Philadelphia Housing,* the Court vacated the arbitrator's reinstatement of a public housing security officer who defrauded an elderly tenant. The court observed that nothing in the CBA suggested that the Housing Authority had bargained away its power to discharge a dishonest employee and further observed that, "such dishonest conduct constitutes an affront to the integrity of the entire Housing Authority security force." The court ruled that the arbitrator erred in concluding that, "the Housing Authority could have intended to bargain away its absolute responsibility to ensure the integrity of its housing security force by discharging an officer who has defrauded one of the very people whom he is paid to protect." 500 Pa. at 216, 455 A.2d at 627.

In *Musser,* the court affirmed the decision of common pleas to overturn an arbitration award and reinstate the discharge of two county prison guards who repeatedly assaulted an inmate. The court concluded that the relevant CBA provisions did not support the arbitrator's interpretation. In particular, the court pointed to management's express reservation of discretion as to employee discipline except with respect to "minor offenses," which were subject to a scheme of graduated discipline. After concluding that the arbitrator properly found the offensive behavior to be more than minor, the court stated that, "[i]f the [Prison] Board is to carry out its duty relating to the safekeeping of pris-

oners, the Board must have the unfettered power to discharge an employee who is found to have subjected an inmate to physical abuse." 519 Pa. at 396, 548 A.2d at 1201.

In *ISSU,* the court reinstated the discharge of a liquor store manager who falsified store records and misappropriated funds. Noting the absence of anything in the CBA "to suggest that the LCB had 'bargained away' its power to discharge a proven thief," the court concluded that presumptively the LCB retained the power to discharge an employee who stole from the agency. 520 Pa. at 277, 553 A.2d at 953. In discussing the rulings in *Philadelphia Housing* and *Musser* regarding a public employer's contractual relinquishment of unfettered discretion to fire an employee who commits certain conduct, the court said:

> If an agency of the Commonwealth entered into an agreement, which expressly excluded conduct by an employee of the nature herein, from the definition of "just cause" for discharging that employee, its validity would at best be questionable.
>
> . . . .
>
> [I]t should be recognized that a governmental agency does not have the freedom of a private enterprise to relinquish powers inherently essential to the proper discharge of its function.

*ISSU,* 520 Pa. at 276, 277, 553 A.2d at 953, 954.

*Philadelphia Housing, Musser* and *ISSU* were all decided prior to the court's rejection, in *Cheyney University,* of the "manifestly unreasonable" standard of "essence test" review. *See Cheyney University,* 560 Pa. at 148, 743 A.2d at 412. Therefore, the standard of judicial deference under which the court decided these

three cases no longer applies.[1] *See id.* Nevertheless, the court continued to cite these cases for the proposition that a public employer retains absolute authority to fire an employee for conduct that undermines the employer's discharge of its public function and duties. *See City of Easton,* 562 Pa. at 446, 756 A.2d at 1111.

In *City of Easton,* the court reinstated the discharge of an employee who committed theft by falsifying time records in order to collect pay from both the City and a private security service for identical work hours. The CBA explicitly stated that the City could immediately dismiss an employee who engaged in willful misconduct or neglect of duties resulting in serious adverse consequences to the City and prescribed a schedule of graduated discipline for offenses not rising to the level of willful misconduct. Relying on *Philadelphia Housing, Musser* and *ISSU,* the court described this court's error in affirming the arbitrator's reinstatement of the grievant's employment, as follows: [2]

> The above cases cited by the City in support of its argument do indeed illustrate the error of the essential holding of the majority of the Commonwealth Court, which was that it lacked the authority to overturn the arbitration award because the [arbitrators'] interpretation of the term "willful misconduct" in the disciplinary policy section [of the CBA] was beyond the purview of judicial review under the essence test. In rendering its decision on the merits of [the]

grievance, the [arbitrators] did not, as the majority of the Commonwealth Court improperly assumed, have absolutely unfettered authority to interpret the term "willful misconduct" as it saw fit. Rather, the [arbitrators'] construction of the [CBA] should have, but did not, take into account the fact that the City, by entering into the collective bargaining agreement at issue, did not and could not relinquish those powers which were essential to its ability to properly discharge its various functions, including the power to terminate those employees who steal from the City itself, or steal from others while working for the City. *See, e.g. Pennsylvania Liquor Control Bd.,* 520 Pa. at 277–78, 553 A.2d at 953–54 [ISSU] (recognizing the principle that governmental agencies do not have the freedom to relinquish those powers that are essential to the proper discharge of their functions, including, but not limited to, their power to terminate proven thieves).

. . . .

[G]overnment entities do not have the freedom to relinquish their right to terminate an employee who is proven to have stolen property from them. *See [ISSU]; Musser,* 519 Pa. at 395–96, 548 A.2d at 1201–202; *Philadelphia Housing Auth.,* 500 Pa. at 216, 455 A.2d at 627. Along these same lines, the City, as a governmental entity, did not and does not have the freedom to relinquish

---

1. *See, e.g., Crawford County v. AFSCME Council Local 85,* 693 A.2d 1385, 1392 (Pa. Cmwlth.1997), where our court applied *Phile. Hsg., Musser* and *ISSU* in an analysis that is no longer appropriate in light of *City of Easton* and *OAG.*

2. In a footnote, the court in *City of Easton* stated:

> We note that the majority of the Commonwealth Court misinterpreted the hold-

ings of our decisions in these three cases, concluding that they were limited to only those situations where an employee's proven misconduct is criminal as to his employer. Nothing in the language of the cited cases, however, so limits their holdings and we reject any judicial interpretation so limiting them.
*City of Easton,* 562 Pa. 438, 447 n. 3, 756 A.2d 1107, 1111 n. 3 (2000) (citation omitted).

its absolute right to terminate an employee such as [grievant] who, at *best*, stole from a third party while he was working in the employ of the City.

*Id.* at 445–46, 756 A.2d at 1111–12. (emphasis in original).

Most recently, in *Office of Attorney General v. Council 13, AFSCME (OAG)*, 577 Pa. 257, 844 A.2d 1217 (2004), our Supreme Court sustained the arbitrator's reinstatement of a state narcotics agent discharged for driving his state vehicle after consuming alcohol while off-duty and engaging in unbecoming public conduct. While emphasizing the deferential nature of appellate review under the essence test, the court acknowledged the continued vitality of *City of Easton* and *ISSU*. *Id.* at 271–73, 844 A.2d at 1226. Pointing to these cases, as well as *Philadelphia Housing* and *Musser*,[3] the Court in *OAG* stated that a government employer cannot bargain away its power to fire for misconduct bearing directly upon the performance of its public function and recognized that this incapacity imposes a legal restriction on an arbitrator's interpretation as to what the parties meant by "just cause." *OAG*, 577 Pa. at 271–73, 844 A.2d at 1226 (citing *City of Easton*, 562 Pa. at 446, 756 A.2d at 1111).

The court applied this principle of contractual incapacity where the employee's conduct breached the employer's duty to protect public housing tenants in *Philadelphia Housing* and to protect inmates from assault in *Musser*. It also applied where the employee committed a crime directly against the employer such as the liquor store embezzlement in *ISSU* or committed a crime against a third party while working for the governmental employer such as

the fraudulent report of work hours in *City of Easton*. In contrast, in *OAG*, the principle did not apply where the grievant was off-duty and his misconduct was neither directed toward his employer nor toward someone to whom his employer, as an essential element of its government function, owed a duty of care. Consequently, in *OAG* the arbitrator's interpretation of "just cause" was not limited by a legal incapacity on the part of the governmental employer to bargain with respect to the circumstances justifying termination.

Huntley's misconduct in the present case falls outside of the type of conduct described in the above precedent as that bearing upon the governmental employer's discharge of its public function. Huntley did not commit a crime directly against his employer as in *ISSU*. When he left his co-workers, Huntley removed himself entirely from the workplace and his work duties. He was at that point off-duty as much as the grievant in *OAG*. Thus, he did not commit a crime against a third party while working as in *City of Easton*. Equally important, his theft did not impact a third party whom his employer, the City Department of Public Works, was charged with protecting, nor did it otherwise impair the city's ability to perform any part of its essential function. Therefore, the City was not precluded from bargaining with respect to whether that misconduct constituted just cause to terminate employment, and the arbitrator was at liberty to construe the "just cause" provision of the CBA in light of the many factors generally recognized as relevant indicia of contract intent.[4]

3. In a footnote, the Court in *OAG* also recognized *Musser* and *Philadelphia Housing Authority* as cases in the analytical lineage of *ISSU* and *City of Easton*. *OAG*, 577 Pa. at 272 n. 13, 844 A.2d 1226 n. 13.

4. In *OAG*, the Court said:

Although there is no exact definition [of "just cause"], there is a general consensus as to some of the factors that may be considered in determining whether there is just

In interpreting the undefined "just cause" provision, the arbitrator considered the lack of evidence regarding employer's asserted policy of zero tolerance for any crime, and the evidence on both sides regarding Huntley's employment history, addiction problems, lack of candor, as well as employer's failure to consider mitigating circumstances. This was appropriate in that "the concept of just cause, as generally understood, may be more than a simple determination of whether the employee engaged in misconduct." *OAG*, 577 Pa. at 270–71, 844 A.2d at 1225. The arbitrator's decision reflects a proper consideration of the evidence probative of the parties' intended meaning as to "just cause" for discharge. For this reason, the arbitrator's award was rationally derived from the CBA.

Accordingly, we affirm.

### *ORDER*

AND NOW, this 21st day of June, 2004, the order of the Court of Common Pleas of Allegheny County in the above captioned matter is hereby AFFIRMED.

cause for discharge or discipline, and in evaluating the penalty imposed. Arbitrators have considered such factors as, *inter alia,* whether there was any investigation; post-discharge misconduct and pre-discharge misconduct; a grievant's past employment record; length of service; post-discharge rehabilitation; and unequal treatment of other employees for similar misconduct.
*OAG* at 269, 844 A.2d at 1224 [citing Frank Elkouri and Edna Asper Elkouri, *How Arbitration Works,* 650–54, 670–87 (4th Ed.) ].