**PORT AUTHORITY OF ALLEGHENY COUNTY, Appellant**

v.

**AMALGAMATED TRANSIT UNION LOCAL 85.**

Commonwealth Court of Pennsylvania.

Argued May 5, 2004.
Decided June 21, 2004.
Reargument Denied Aug. 12, 2004.

Michael A. Palombo, Pittsburgh, for appellant.

Joseph S. Pass, Pittsburgh, for appellee.

BEFORE: COLINS, President Judge, and LEADBETTER, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge LEADBETTER.

The Port Authority of Allegheny County (Port Authority) appeals from the order of the Court of Common Pleas (common pleas) sustaining the arbitration award that reinstated Robert Irdi to his position as an incline[1] operator after finding that he had inappropriately touched a female passenger. We reverse.

The Port Authority fired Irdi from his job of 26 years based on the report of the passenger and a co-worker who witnessed the incident where Irdi more than once reached under the passenger's shirt to touch her abdomen. In her written report, the passenger explained that after Irdi noticed her waiting for the incline, he approached her, touched her, and despite her scream to get away he again lifted her shirt and touched her again. When first confronted with the report of misconduct, Irdi denied the incident occurred but later admitted a single touching, explaining it as

---

**1.** The incline is part of the public transportation system in Pittsburgh and transports passengers up and down the steep hillside of Mt. Washington.

an innocent attempt to notify the passenger that an incline car was available for boarding. Irdi claimed that the passenger startled and moved in a way that unintentionally caused his hand to touch her abdomen. Irdi later pled guilty to harassment and a charge of indecent assault was dismissed. Based on the incident as reported by the passenger, the Port authority fired Irdi and he filed a grievance. After the Port Authority confirmed the discharge, Irdi's union requested arbitration as provided in the then applicable collective bargaining agreement (CBA).

The CBA provided, in relevant part, that, "The Authority has the right to discipline employees ... for sufficient cause under the theory of progressive discipline. Discipline, as used here, includes ... suspension as well as discharge." The CBA also provided that, "[s]hould any dispute arise between the parties concerning the interpretation or application of any section or sections of this Agreement which cannot be adjusted, the matter shall be submitted to a board of arbitration...." [2]

After the parties selected a board of three arbitrators, a hearing ensued at which the passenger, the grievant, the coworker eyewitness and the Port Authority employee who investigated the passenger's complaint all testified regarding the incident.[3] The arbitrators rejected Irdi's explanation of the incident and found that the evidence "supports [passenger's] claim of intentional, malicious, and defiant such behavior—which the Port Authority could not have condoned or failed to punish [grievant] for, in its Employer status." The arbitrators further noted that Irdi's 26 years of employment was marked by "numerous and various work or job performance infractions and disciplinary actions", but these did not include any misconduct similar to the present incident. Based on these findings, two of the three arbitrators ruled that Irdi committed a serious misconduct warranting "severe discipline" but in light of his long service and the absence of any prior similar misconduct, the penalty of discharge was excessive. The arbitrators directed Irdi's reinstatement to his former job and seniority status but declined reimbursement of back pay or benefits.

The Port Authority appealed to common pleas. Finding nothing in the CBA that limited the arbitrators' authority to rescind the discharge, common pleas concluded that the arbitrators rationally derived the award from the CBA and so satisfied the essence test standard of appellate review. In addition, the arbitrators opined that no public policy rationale justified upsetting the award and that, "[i]n the absence of any guidance from the Pennsylvania appellate courts, this Court is reluctant to extend the grounds upon which a trial court may vacate an award of an arbitrator." *Port Auth. of Allegheny County v. Amalgamated Transit Union Local 85,* (No. GD 01–20035, filed January 20, 2004), op. at 8. Common pleas confirmed the arbitration award and thereafter, the Port Authority filed the present appeal.

The Port Authority asserts that the award must be overturned because it is premised upon an implicit finding that the Port Authority bargained away its abso-

---

2. *See* Section 13.2(*o*) of the Act of April 6, 1956, P.L. (1955) 1414 (referred to as the Second Class County Port Authority Act), added by the Act of October 7, 1959, P.L. 1266, *as amended,* 55 P.S. § 563.2(*o*), which directs that disputes involving CBA interpretation be submitted to grievance arbitration and directs

the arbitrator to base the award upon the express terms of the labor agreement.

3. The record does not contain a transcript of the hearing before the arbitrators but in the written decision the arbitrators quote extensively the relevant portions of the testimony of each witness.

lute right to discharge an employee whose on-the-job misconduct impaired the Port Authority's ability to provide safe public transport. The Port Authority, citing *City of Easton v. American Federation of State, County and Municipal Employees,* 562 Pa. 438, 756 A.2d 1107 (2000), argues that it lacked capacity to contract away the unfettered right to discharge Irdi for an unprovoked attack upon a passenger. This assertion is entirely correct.

■ Our review subjects the arbitrators' award to the "essence test," a standard of review calling for great deference to the arbitrator's interpretation of the CBA, which is a question of fact. *See, e.g., Sys. of Higher Educ. (Cheyney University) v. State Coll. Univ. Prof'l Ass'n,* 560 Pa. 135, 145–50, 743 A.2d 405, 410–13 (1999). The essence test encompasses a two-pronged analysis—whether the issue, as properly defined, is within the terms of the CBA and, if so, whether the arbitrator's interpretation of the CBA can rationally be derived "from the agreement, viewed in the light of its language, its context and any other indicia of the parties' intention. . . ." *Id.* at 146, 743 A.2d at 411 [quoting *Cmty. Coll of Beaver County v. Cmty. Coll. of Beaver County, Soc'y of the Faculty (PSEA/NEA),* 473 Pa. 576, 594, 375 A.2d 1267, 1275 (1977)]. Inasmuch as the parties correctly agree that the issue before the arbitrators falls within the CBA, the focus of our review is only whether the arbitrators failed to rationally derive their interpretation from the CBA.

■ Ample evidence supports the arbitrators' finding that Irdi twice reached under the shirt of a female passenger and touched her despite her demands that he stop. The arbitrators characterized this behavior as "intentional, malicious and defiant" and appropriately recognized it to be a "serious misconduct" warranting "severe discipline." However, the arbitrators erred when they inquired into the intended meaning of the undefined CBA term "sufficient cause" for discharge and found that, as a matter of contractual intent, Irdi's misconduct did not qualify as sufficient grounds for automatic discharge. As we opined in a companion case to our present decision, "a government employer cannot bargain away its power to fire for misconduct bearing directly upon the performance of its public function and . . . this incapacity imposes a legal restriction on an arbitrator's interpretation as to what the parties meant by 'just cause.'" *See City of Pittsburgh v. Pittsburgh Joint Collective Bargaining Comm.,* 852 A.2d 452, 458 (Pa. Cmwlth.2004).

In *City of Pittsburgh,* we discussed at length the seminal Pennsylvania Supreme Court cases in which this principle of contract incapacity arose, *see Philadelphia Housing Authority v. Union of Security Officers,* 500 Pa. 213, 455 A.2d 625 (1983); *County of Centre v. Musser,* 519 Pa. 380, 548 A.2d 1194 (1988); *Pennsylvania Liquor Control Board v. Independent State Stores Union (ISSU),* 520 Pa. 266, 553 A.2d 948 (1989) and *City of Easton,* culminating with the most recent pronouncement in *Office of Attorney General v. Council 13, AFSCME, AFL–CIO,* 577 Pa. 257, 844 A.2d 1217 (2004) confirming the continued vitality of the principle. It suffices to say here that Irdi's misconduct falls squarely within the kind of conduct described in this line of precedent as that bearing upon the Port Authority's ability to perform its function of providing safe public transport. The Port Authority, by agreeing to the "sufficient cause" provision of the CBA, did not and could not relinquish its unfettered ability to fire an employee who sexually assaulted a passenger.

Insofar as the arbitrator's award reinstating Irdi was based on an interpretation of the CBA that could not properly have been agreed to by the Port Authority, the

award is not rationally derived from the CBA. For this reason, common pleas erred in sustaining the award and we reverse.

## *O R D E R*

AND NOW, this 21st day of June, 2004, the order of the Court of Common Pleas of Allegheny County in the above captioned matter is hereby REVERSED.